**SICANOFF VEGETABLE OIL CORPORATION**

v.

**UNITED STATES.**

**No. 70–59.**

United States Court of Claims.

March 2, 1960.

Harold R. Burnstein, Chicago, Ill., for plaintiff. John E. Hughes and John W. Hughes, Chicago, Ill., were on the briefs.

Eugene Emerson, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Lyle M. Turner and Philip R. Miller, Washington, D. C., were on the briefs.

MADDEN, Judge.

This is a suit for the recovery of excess profits taxes in the amount of $26,629.86 paid by the plaintiff for its fiscal year which ended on February 28, 1951. The plaintiff did in fact overpay its excess profits taxes in substantially the amount claimed. The Government asserts that the plaintiff cannot recover the overpayment because it failed to file a proper claim for refund within the time specified by the statutes for filing such claims.

The plaintiff was incorporated on March 15, 1949. On May 10, 1951, it filed its income and excess profits tax return for the year in question. The return showed $688,313.29 of income taxes and $42,129.46 of excess profits taxes. The last installment of these taxes was paid on February 15, 1952.

On October 20, 1951, Congress enacted section 501 of the Revenue Act of 1951, 65 Stat. 452, 541, 26 U.S.C.A. Excess Profits Taxes, § 430(e), which granted to new corporations such as the plaintiff a reduction in their excess profits taxes, effective retroactively to apply to the plaintiff's tax year here in question. Under this statute the plaintiff's excess profits tax would have been $16,498.81 rather than $42,129.46 as returned and paid by it.

Upon a review of the plaintiff's 1951 return in 1954 a revenue agent recommended that the plaintiff be taxed as a personal holding company, and that a personal holding company surtax of $759,062.62 be imposed upon it. That action would not affect or diminish the income tax of $688,313.29 which the plaintiff had reported and paid. It would, however, have eliminated the excess profits tax of $42,129.41 which the plaintiff had reported and paid. The agent recommended the disallowance of some small items of deduction from income which the plaintiff had taken, and in that regard set off $6,461.08 of underpayment of income tax against the $42,129.41 of overpayment of excess profits tax, making a net overpayment of $35,668.33 of excess profits taxes, and a deficiency of $759,062.62 of personal holding company surtaxes.

On April 23, 1954, the Commissioner of Internal Revenue sent the plaintiff a formal notice of the deficiency of $759,062.62 and the overassessment of $35,668.33 recommended in the agent's report. The Commissioner's letter admonished the plaintiff to be sure to protect itself against the running of the statute of limitations against its recovery of the overassessment, and enclosed a form for the filing of a claim for refund.

On June 23, 1954, the plaintiff filed a petition with the Tax Court asking that the personal holding company deficiency assessment be set aside. The Tax Court, 27 T.C. 1056, in 1957 held that the plaintiff was a personal holding company. On January 29, 1958, the United States Court of Appeals for the Seventh Circuit reversed the Tax Court and held that the plaintiff was not a personal holding company, Sicanoff Vegetable Oil Corp. v. Commissioner of Internal Revenue, 251 F.2d 764. That decision removed the assessment of the $759,062.62 of personal holding company surtax from the controversy.

Returning now to 1954, the plaintiff on June 28 of that year filed a claim for refund of the $35,668.33 overassessment of which it had been advised by the Commissioner. This date was more than two years after the payment of the tax on February 15, 1952, and more than three years after the filing of the return on

May 10, 1951. It was also more than two but less than three years after the date of the 1951 relief statute which reduced the plaintiff's excess profits tax from $42,129.46 to $16,498.81, the difference being approximately the amount for which the plaintiff sues here.

The plaintiff's 1954 claim for refund was stated to be based upon the agent's report that there was an overassessment of $35,668.33 because the plaintiff, being a personal holding company, was not subject to the excess profits tax. The plaintiff's suit in the Tax Court was brought, and won in the Court of Appeals, upon the ground that the plaintiff was not a personal holding company. On that ground, which turned out to be right, the plaintiff was subject to the excess profits tax, and the overassessment stated by the Commissioner was erroneous. So far as the writings of the parties disclose, neither party, until after the 1958 decision of the Court of Appeals, gave attention to the circumstance that though the plaintiff, not being a personal holding company, would be subject to the excess profits tax, that tax would be greatly reduced by reason of the 1951 relief statute.

In April 1958, even after the decision of the Court of Appeals, the plaintiff filed an amended claim for refund which in effect reiterated the reason given in its 1954 claim. In July 1958 the plaintiff filed another amended claim for refund on the ground on which this suit is based, i. e., that its excess profits tax was $26,629.86 less than the amount that it paid.

The above recital shows that the plaintiff did not assert, in a claim for refund, the ground on which it brings this suit, until more than six years after it had filed its return, had paid its tax, and the relief statute reducing its tax had been enacted. As we have seen, the Government asserts that the plaintiff did not file a claim for refund in time. The plaintiff says that its 1954 claim was in time, and that its 1958 claim was a permissible amendment of its 1954 claim. The Government says that the plaintiff's 1954 claim was not in time, hence there was no claim on file which could be amended in 1958. It further says that the 1958 claim was not a permissible amendment of the 1954 claim, because it was based upon a wholly different ground.

The statutes of limitations upon which the Government relies are sections 322 (b) and 3772(a) (1) of the Internal Revenue Code of 1939, 26 U.S.C. (1952 ed.) §§ 322 and 3772. Section 322 says that no refund or credit shall be given to a taxpayer unless he files a claim for it within three years from the time his return is filed, or within two years from the time the tax was paid. Section 3772 says that a taxpayer may not sue for a refund unless he has filed a claim for refund which complies with the provisions of law and the regulations of the Secretary of the Treasury.

The plaintiff says that although its 1954 claim was not within the three- or the two-year periods specified in section 322, it was within the rule applied by this court in the case of Verckler v. United States, Ct.Cl., 1959, 170 F.Supp. 802. In that case a retroactive relief statute was so many years retroactive that, from the time of its passage, only three months of time remained between the date when the taxpayer had a right to a refund, given him by the retroactive statute, and the time when his right to file a claim for refund would be barred if the applicable statutes of limitations were literally applied. In that case this court held that the right to file the claim was not barred. In the instant case the equities in the taxpayer's favor are not nearly so urgent. As to the two-year period after the payment of the tax, that period, in the plaintiff's case, fully elapsed after the relief statute was passed, since the statute was passed before the last payment of the tax was made. As to the section 322 three-year period after the filing of the return, the 1954 claim was filed two years and eight months after the relief statute was passed. Since the Verckler case involved a different, though comparable, statute of limitations, and the decision was based

to a considerable extent upon the equities of that case, and since, in view of what is held hereinafter, a decision upon that point would not affect the result reached herein, we do not decide whether the 1954 claim for refund was filed in time.

We now assume that the 1954 claim was filed in time, and discuss the plaintiff's contention that the July 1958 claim was a permissible amendment of the 1954 claim. At the time the 1958 claim was filed, the 1954 claim had not been rejected by the Commissioner. The 1958 claim, like the 1954 one, was a claim for the refund of excess profits taxes. The ground of the 1954 claim was the obvious one that the Commissioner had determined an overpayment of excess profits taxes because he had also determined that the plaintiff was a personal holding company, which, if it was, was not subject to excess profits taxes but was subject to a very large personal holding company surtax. When the plaintiff filed the 1954 claim for refund, it was merely a protective filing, because it had shortly before filed its suit in the Tax Court to obtain a determination that it was not a personal holding company, which determination would reinstate its liability for excess profits taxes. It won that point in the Court of Appeals, and thereby its 1954 claim for refund became untenable. Then, for the first time, it seems to have become aware that, though it was liable for excess profits taxes, it had greatly overpaid such taxes, since it had not taken advantage of the 1951 relief statute.

█ We have then, a 1954 claim for refund, assumed to be timely filed, "amended" by a 1958 claim based upon a completely different ground. According to binding precedents we cannot treat the 1958 claim as timely. United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398; United States v. Garbutt Oil Co., 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405.

The plaintiff contends that the Government waived the defects upon which it here relies. Shortly before July 14, 1958, which was two days before the plaintiff filed its final claim for refund, the Internal Revenue Service sent to the plaintiff a form showing an overassessment for 1951 of $27,082.61. The form was entitled, "Offer of waiver of restrictions on assessment and collection of deficiency in tax and of acceptance of overassessment." The figures filled in on the form by the Internal Revenue Service would seem to indicate that they were computed upon the ground thereafter stated in the plaintiff's last claim for refund and relied on in this suit. If the plaintiff made this "offer", it was not accepted by the Commissioner, presumably because it had in the meantime occurred to the Internal Revenue Service that the plaintiff had lost its right to file a claim for refund on this new ground.

█ Section 322, after prescribing the periods within which claims for refund may be filed, says "no credit or refund shall be allowed * * * after the expiration of whichever of such periods expires the later." That statutory language does not leave much leeway for the application of any doctrine of waiver when a valid claim has not been filed in time. In United States Pipe & Foundry Co. v. United States, 155 F.Supp. 231, 140 Ct.Cl. 132, this court held that there might be a waiver by the Commissioner of a lack of specificity in a claim for refund, if he considered the claim on its merits. The facts in that case were complicated and unusual and the absence of a claim for refund upon a valid ground was not clear. The Supreme Court of the United States in the case of Angelus Milling Co. v. Commissioner, 325 U.S. 293, 296, 65 S.Ct. 1162, 89 L.Ed. 1619, recognized that the precedents are by no means clear on the subject of the power of the Commissioner to waive defects in claims for refund. In the instant case the Commissioner, in considering the plaintiff's claim, which was based upon a ground which had existed and had not been asserted for six years, was, presumably by mistake, considering a claim long since barred by the statute of limitations. He was not permitted by law to pay such a claim, and his consideration

of it could not enlarge his legal authority.

 The plaintiff also contends that it was not until the Court of Appeals decided, on January 29, 1958, that it was not a personal holding company, and therefore subject to the excess profits tax, that the relief provision here in question "became operative." In many cases, there is pending litigation which will affect the outcome of other litigation, but it would not be practicable to treat all statutes of limitations as being tolled by that fact. In addition, in this instance it had been the plaintiff's constant contention that it was not a personal holding company. It is therefore not unfair to hold it to the responsibility for asserting its claim for limitation of the excess profits tax for which it would be liable.

The plaintiff has filed an affidavit of its accountant stating that in 1953, in a discussion of the plaintiff's tax problems with the assigned agent of the Internal Revenue Service he said that the plaintiff intended to file a claim for refund based on the 1951 relief statute and the agent requested that such a claim not be filed because it would "muddy the waters."

 Section 3772 says that no suit may be maintained in any court for the refund of taxes

"* * * until a claim for refund or credit has been duly filed with the Commissioner, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

We have no doubt that the statute contemplates claims filed in writing. Treasury Regulations 111, § 29.322-3 expressly so require. Conversations between the plaintiff's accountant and the agent of the Internal Revenue Service may not serve as a substitute for a written claim for refund. Ritter v. United States, 3 Cir., 1928, 28 F.2d 265; Wrightsman Petroleum Co. v. United States, 35 F. Supp. 86, 92 Ct.Cl. 217, 238, certiorari denied 313 U.S. 578, 61 S.Ct. 1095, 85 L.Ed. 1535.

The plaintiff's motion for a summary judgment is denied. The defendant's similar motion is granted and the plaintiff's petition is dismissed.

It is so ordered.

LARAMORE and WHITAKER, Judges, concur.

JONES, Chief Judge, took no part in the consideration and decision of this case.