# United States Court of Appeals for the Federal Circuit

05-5014

COMPUTERVISION CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

John S. Brown, Bingham McCutchen LLP, of Boston, Massachusetts, argued for plaintiff-appellant. With him on the brief were George P. Mair, Donald-Bruce Abrams and Matthew D. Schnall.

Bruce R. Ellisen, Attorney, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Eileen J. O'Connor, Assistant Attorney General; Richard T. Morrison, Deputy Assistant Attorney General; and Gilbert S. Rothenberg and Francesca U. Tamami, Attorneys.

Appealed from: United States Court of Federal Claims

Judge Marian Blank Horn

# United States Court of Appeals for the Federal Circuit

05-5014

COMPUTERVISION CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:    April 20, 2006

_____

Before NEWMAN, RADER, and DYK, Circuit Judges.

DYK, Circuit Judge.

Computervision Corporation ("Computervision") appeals the decision of the United States Court of Federal Claims which held that Computervision is not entitled to a refund of deficiency interest assessed and paid with respect to its 1982 tax year. The court granted the United States' motion to dismiss on the ground that the statute of limitations barred an interest suspension claim because the plaintiff failed to file a claim with the Internal Revenue Service ("IRS") until more than 10 years after the expiration of the two year limitation period of 26 U.S.C. § 6511(a). The court also held that an interest netting claim failed to state a claim because the requirements of 26 U.S.C. § 6621(d) were not met under our decision in Federal National Mortgage Ass'n v. United States, 379 F.3d 1303 (Fed. Cir. 2004). We affirm.

BACKGROUND

The facts of this case are not in dispute. On September 14, 1983, Computervision, a manufacturer of computer-aided manufacturing products, overpaid its tax liability shown on its 1982 return by $4,750,231, and elected to apply this overpayment to its 1983 tax year.[1] On September 17, 1984, Computervision overpaid the amount of taxes shown on the 1983 return by $7,329,276, and again elected to apply this overpayment to the following year, the 1984 tax year. Finally, on July 2, 1985, Computervision filed a return for the 1984 tax year showing an overpayment of $7,166,031, and requested a refund of the entire amount. The IRS paid the refund, without interest, on August 2, 1985.

Following an audit, the IRS issued an "examination report" on January 7, 1986, in which it asserted that the taxpayer's 1982 return had understated its tax liability and proposed a deficiency of $6,224,982 for the 1982 tax year. A portion of this deficiency resulted from the IRS's determination that a subsidiary of Computervision, Computervision International, Inc. (CVI), did not qualify as a domestic international sales corporation, or DISC, during the 1983 tax year. See 26 U.S.C. § 992(a)(1) (1982).[2] Another portion of the deficiency concerned what we refer to as non-DISC issues.

---

[1] Under 26 U.S.C. § 6402(b), the IRS permits a corporate taxpayer that has overpaid its liability in one year to claim a credit for the overpayment against its estimated taxes for the succeeding year. 26 U.S.C. § 6402(b) (2000).

[2] The DISC provisions allow a domestic production company to establish a DISC to handle its export sales and leases. The DISC itself is not subject to tax on its earnings. 26 U.S.C. § 991 (2000). Instead, a portion of the DISC's earnings is taxed to the DISC's shareholders as a constructive dividend, 26 U.S.C. § 995(b)(1), and the remaining income is not taxed to the shareholders until distributed. 26 U.S.C. § 995;

On April 11, 1986, Computervision submitted a protest regarding the IRS's position with respect to the 1982 tax year to the Boston Appeals Office of the IRS, disputing among other issues the determination that CVI was not a DISC. The non-DISC issues in the examination report were resolved by an agreement that the tax liability relating to the non-DISC issues was $2,215,952.[3] The IRS proposed a total 1982 tax deficiency of $7,886,409. Of that amount, $5,670,457 was attributable to the DISC issue, and $2,215,952 to non-DISC issues.

A 1985 net operating loss carryback eliminated all of the proposed 1982 deficiency (except for a deficiency of $37,776 attributable to investment tax credit recapture). However, the carryback did not eliminate Computervision's liability for interest which had accrued on the 1982 deficiency. On June 3, 1988, the IRS assessed Computervision deficiency interest totaling $4,095,974.42, plus tax in the amount of $37,776. After corrections, the $4,095,974 interest assessment was revised to $4,063,073. Importantly for purposes of this appeal, the $4,063,073 interest assessment included (1) interest in the amount of $2,808,888 attributable to the still-disputed DISC qualification issue, and (2) interest in the amount of $1,254,186 attributable to the resolved non-DISC issues. The IRS computed the deficiency interest based on the entire 1982 deficiency amount, from the due date of the 1982 return to the due date of the 1985 return (when the NOL carryback offset the deficiency). Computervision paid the $37,776 tax deficiency on March 7, 1989. Computervision eventually also paid the deficiency interest claimed by the IRS, with the final payment of $4,045,011.64 occurring on April 28, 1989.

---

see Dow Corning Corp. v. United States, 984 F.2d 416, 417 (Fed. Cir. 1993).

05-5014                                             3

The statute bars suit for recovery of the deficiency interest unless "a claim for refund . . . has been duly filed with the [IRS] . . . ." 26 U.S.C. § 7422(a) (2000). A claim is timely filed if filed "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever . . . expires the later . . . ." 26 U.S.C. § 6511(a). Within two years of the final payment, on August 4, 1989, Computervision filed a refund claim with the IRS (the "original refund claim"), in which it claimed "that portion of the interest relating to the [DISC] disqualification issue" for the 1982 tax year. The refund claim specifically requested $2,808,888, the amount of interest assessed by the IRS on the DISC tax liability. The refund claim also included a boilerplate provision stating that:

> Computervision claims as a basis for the refund of the interest paid with respect to its 1982 taxable year such other grounds as are shown to be appropriate by the tax returns, books and records and the Examination Report and related Protest of Computervision and [CVI] for their respective tax years ended December 31, 1982, and January 31, 1983.

J.A. at 1228.

Section 6532 allows the taxpayer to commence suit six months after filing a refund claim if the IRS fails to disallow the claim during that time. 26 U.S.C. § 6532(a). By April 4, 1990, the IRS had not acted on the matter, so Computervision filed a complaint in the Court of Federal Claims. The complaint alleged that "Computervision is aggrieved by the defendant's failure to refund the interest attributable to the purported disqualification of [CVI] as a DISC."

Meanwhile, on November 4, 1993, Computervision filed a petition in the United States Tax Court disputing deficiencies that were assessed for two different tax years, 1983 and 1984—primarily on the theory that the IRS had improperly denied DISC

---

3    Apparently, this amount was later revised by agreement to $2,102,421.

treatment for those years. Proceedings in the Court of Federal Claims relating to the 1982 tax year interest assessment were stayed pending the resolution of the DISC issue by the Tax Court, apparently on the theory that the DISC determination for the 1983 and 1984 tax years would also resolve the issue for the 1982 tax year. On March 18, 1996, the Tax Court ruled in Computervision's favor on the DISC issue, holding that CVI qualified as a DISC. Computervision Int'l Corp. v. Comm'r, 71 T.C.M. (CCH) 2450 (1996). The Tax Court's decision on the DISC issue became final on May 25, 1998.[4]

Following the resolution of the DISC issue by the Tax Court, the Court of Federal Claims lifted its stay with respect to the 1982 tax year proceedings on June 22, 1998. Computervision and the Department of Justice ("DOJ") engaged in settlement negotiations relating to the 1982 DISC issue. On July 22, 1998, Congress enacted a new provision of 26 U.S.C. § 6621, requiring interest netting, that is, requiring the IRS to "apply a zero net interest rate to overlapping periods of mutual indebtedness between a taxpayer and the IRS." Fed. Nat. Mortgage Ass. V. United States, 379 F.3d 1303, 1306 (2004) (describing 26 U.S.C. § 6621(d)). In May 2, 2000, letters to both DOJ and the IRS, Computervision claimed the right to a refund of non-DISC interest based on the theory of interest netting under 6621(d). Computervision did not in these letters assert a claim for interest suspension. The IRS replied on August 17, 2000, treating the claim as including an interest suspension claim for 1982. Specifically, the IRS's August 17 letter stated "Revenue ruling 99-40 (Sequa) [interest suspension] is applied regarding the credit elect [from the 1982 tax year] to 1983. No claim is necessary." J.A. at 1405. The

---

[4] The Tax Court proceeding remains pending with respect to certain computational issues.

DOJ sent a letter on October 25, 2000, stating that the DOJ was "not in agreement [with the IRS computations suggesting] that an additional refund or overpayment can be allowed in the instant litigation – over and above that negotiated on the basis of the issues in suit – based upon Revenue Ruling 99-40 <u>absent the filing of a timely claim for refund raising the issue</u>."  J.A. at 1428 (emphasis in original).  In a March 14, 2002, letter, the DOJ reiterated its position and stated that "we do not believe that a timely claim for refund has been filed on [the interest suspension] issue."  J.A. at 1430.  Computervision filed a formal amendment with the IRS on April 4, 2002, in which it claimed non-DISC interest under the interest suspension theory.

On July 9, 2003, Computervision filed an amended complaint in the Court of Federal Claims, claiming $820,946.13 in deficiency interest relating to non-DISC issues on theories of interest suspension and interest netting.

The government contended that the interest suspension claim was barred by the statute of limitations.  Unlike the DISC interest claim, which involved a challenge to the underlying tax liability, the claim for interest suspension did not involve any challenge to the underlying deficiencies asserted with respect to the non-DISC issues.  Rather, the taxpayer contended that, even though the underlying tax liability had been properly determined with respect to non-DISC issues, interest was not owed.  The taxpayer relied on the principle of interest suspension, which derives from 26 U.S.C. § 6601(a), and was formally set out in Revenue Ruling 99-40, published on October 4, 1999, more than three years earlier.  1999-2 C.B. 441.  Section 6601(a) requires the payment of interest by the taxpayer with respect to "any amount of tax [that] . . . is not paid on or before the last date prescribed for payment," and provides that "interest on such amount

. . . shall be paid for the period from such last date to the date paid." Revenue Ruling 99-40 addressed "the manner in which interest on a subsequently determined deficiency is computed under § 6601(a) when the taxpayer makes an election to apply an overpayment to the succeeding year's estimated taxes." Id.

Under Revenue Ruling 99-40, interest suspension applies when (a) a taxpayer elects to credit an overpayment reported on the return for year one [here 1982] to year two [here 1983]; (b) a deficiency is subsequently determined for year one [1982]; and (c) the credit elect to year two is not "needed" to satisfy the required payments of estimated tax for year two [1983]. Rev. Rul. 99-40. Under these circumstances, interest is suspended relating to the deficiency for year one [1982]. Here, in other words, the taxpayer asserted that deficiency interest was not owed for 1982 because the tax for that year had been overpaid, and that the credit-elect transferring that payment to the 1983 tax year should be ignored for purposes of computing interest. Similarly, taxpayer's credit elect from 1983 to 1984 was not needed to pay its 1984 liability, because the 1984 taxes had also been overpaid.[5]

As part of the 2003 amended complaint, the taxpayer asserted an alternative theory for recovery of the non-DISC interest based on a theory of interest netting. "Interest netting" is set forth in 26 U.S.C. § 6621(d), which provides that the IRS applies a net interest rate of zero to overlapping underpayments and overpayments of tax. With respect to interest netting there is a different limitations issue (described below), but there is no issue as to whether the claim itself was timely filed with the IRS because the

---

[5] The interest suspension theory is described in our decision in Marsh & McLennan Cos., Inc. v. United States, 302 F.3d 1369, 1378 (Fed. Cir. 2002).

statute provides for retroactive relief if the statutory conditions are satisfied. <u>See</u> 26 U.S.C. § 6621(d), Pub. L. No. 105-206, § 3301(c)(2), 112 Stat. 741 (1998), as amended. The parties agree that interest netting provides identical relief as interest suspension.

On September 9, 2004, the Court of Federal Claims rendered a final decision. <u>Computervision Corp. v. United States</u>, 62 Fed. Cl. 299 (2004). By agreement of the parties, the Court of Federal Claims awarded judgment in favor of the taxpayer in the amount of $2,997,761.42, representing the deficiency interest paid with respect to the DISC deficiency.[6] <u>Id.</u> at 332. However, the Court of Federal Claims granted the government's motion to dismiss the taxpayer's claim for a refund of deficiency interest on the non-DISC deficiencies. It held that the interest suspension claim was barred by the statute of limitations because a claim was not filed with the IRS within two years of the date of payment as required by 26 U.S.C. § 6511(a). <u>Id.</u> at 328-29. It also held that Computervision failed to state a claim for interest-netting under section 6621(d). <u>Id.</u> at 332. Section 6621(d) only applies to overlapping periods when underpayment interest is "payable" and overpayment interest is "allowable." The court held that interest is not "allowable" on an overpayment credited to a succeeding year's estimated tax, nor on an overpayment refunded within 45 days. Computervision's 1982 and 1983 overpayments were credited to succeeding years, and its 1984 overpayment was refunded within 45 days, so it failed to meet the requirements of section 6621(d). <u>See</u> <u>id.</u> at 331-32.

The taxpayer timely appealed, and we have jurisdiction pursuant to 26 U.S.C. §

---

[6] There is a slight discrepancy between the award of $2,997,761.42 and Computervision's original claim of $2,808,888.

1295(a)(3).

## DISCUSSION

## I

We first address the statute of limitations issue with respect to Computervision's interest suspension claim.

Statutes of limitations play an important role in tax administration, benefiting both the government and taxpayers. The government's authority to assess taxes is limited by 26 U.S.C. § 6501, under which taxes must be assessed within three years of the filing of the return. 26 U.S.C. § 6501 (2000). Similarly, the taxpayer must file its refund claim with the IRS "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever . . . expires the later . . . ." 26 U.S.C. § 6511(a).[7] Here the taxpayer's original claim for refund was filed with the IRS within the limitations period because it was filed on August 4, 1989, within two years of the date of the last payment, April 28, 1989. However, that claim did not specifically include the interest suspension claim with respect to the non-DISC issues. A formal claim with the IRS was not filed until April 4, 2002, more than 10 years after the limitations period had expired. Nonetheless, the taxpayer claims that for a variety of reasons the claim was timely.

Understanding the taxpayer's contentions requires a description of the overall regulatory scheme. Section 7422(a) of the Internal Revenue Code bars a taxpayer from filing a suit for refund "until a claim for refund or credit has been duly filed with the

---

[7] The taxpayer may file suit for refund after "the expiration of 6 months from the date of filing the claim . . . unless the Secretary renders a decision thereon within that time," and must file the suit within "2 years from the date of mailing . . . to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates." 26 U.S.C. § 6532(a)(1).

Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422(a) (2000). The Secretary by regulation requires that claims for refund "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R § 301.6402-2(b)(1) (2005) (emphasis added). Earlier regulations contained similar provisions. See, e.g., United States v. Kales, 314 U.S. 186, 193 (1941) (citing Article 1306 of Treasury Regulation 65, promulgated under the 1924 Revenue Act); U.S. Pipe & Foundry, Co. v. United States, 155 F. Supp. 231, 232 (Ct. Cl. 1957) (citing Regs. 111, sec. 29.322-3).

The requirement for filing a proper refund claim "is designed both to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination." Alexander Proudfoot Co. v. United States, 454 F.2d 1379, 1383 (Ct. Cl. 1972) (quoting Union Pac. R.R. v. United States, 389 F.2d 437, 442 (Ct. Cl. 1968), cert denied, 395 U.S. 944 (1969)). This requirement for claim specificity applies equally to claims for deficiency interest which are separate from claims for the underlying tax liability. John B. Lamert & Assocs. Inc. v. United States, 212 Ct. Cl. 71, 1986 WL 22198, at *10 (1976).

The Supreme Court has held that in some circumstances a taxpayer's claim is not barred by the statute of limitations even though the taxpayer did not timely file the formal, detailed claim required by the regulations. See, e.g., Kales, 314 U.S. at 196-97; United States v. Andrews, 302 U.S. 517, 524 (1938); United States v. Memphis Cotton Oil Co., 288 U.S. 62, 70-71 (1933); Tucker v. Alexander, 275 U.S. 228, 231 (1927).

Unfortunately in implementing the Supreme Court's decisions the language used to describe these exceptions has not always been uniform in courts outside of this circuit.

In this circuit this aggregation of rules has come to be known as the substantial variance doctrine.  See Lockheed Martin Corp. v. United States, 210 F.3d 1366, 1371 (Fed. Cir. 2000); see also Western Co. of N. Am. v. United States, 323 F.3d 1024, 1034 (Fed. Cir. 2003); Union Pac. R.R., 389 F.2d at 442-47; Armstrong Rubber Co. v. United States, 207 Ct. Cl. 1023, 1975 WL 3232, at *1 (1975).  The doctrine permits consideration of a claim for refund despite failure to timely file detailed formal claims with the IRS when a substantial variance from the requirements of the regulation is not involved.[8]  But this doctrine applies only in four limited situations.  Each of these has itself come to be identified as a separate doctrine.

A

First, formal compliance with the statute and regulations is excused when the informal claim doctrine is applicable.  Under the informal claim doctrine, a timely claim with purely formal defects is permissible if it fairly apprises the IRS of the basis for the claim within the limitations period.

The informal claim doctrine is best described in the Supreme Court's decision in Kales, 314 U.S. 186.  There within the limitations period the taxpayer submitted an informal letter claiming a refund of tax.  The letter did not comply with the IRS's regulations because it was not filed on the correct form. The taxpayer later filed an

---

[8]    In many cases, the issue is whether there is a substantial variance from a timely filed claim.  See Lockheed, 210 F.3d 1366 at 1371 (Fed.Cir.2000) (holding that taxpayer may not "present[ ] claims in a tax refund suit that 'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS").

untimely amendment that complied with the regulations.  The Supreme Court held that "a [timely] notice fairly advising the Commissioner of the nature of the taxpayer's claim . . . will nevertheless be treated as a[n effective] claim, where formal defects . . . have been remedied by amendment filed after the lapse of the statutory period."  Id. at 194.

The informal claim doctrine is well recognized in other circuits.[9]  We and our predecessor court, the Court of Claims, have specifically applied the doctrine.  See, e.g., Arch Eng. Co., Inc. v. United States, 783 F.2d 190, 192 (Fed. Cir. 1986); Barenfeld v. United States, 442 F.2d 371, 374 (Ct. Cl. 1971); Stuart v. United States, 130 F. Supp. 386, 388-90 (Ct. Cl. 1955); Am. Radiator & Standard Sanitary Corp. v. United States, 318 F.2d 915, 920-22 (Ct. Cl. 1963).

In American Radiator the Court of Claims held that "[i]nformal refund claims have long been held valid" when they "have a written component . . . [and] adequately apprise the Internal Revenue Service that a refund is sought and for certain years."  318 F.2d at 920 (citing Kales, 314 U.S. 186).  The Court of Claims found that the taxpayer

---

[9]  See Kaffenberger v. United States, 314 F.3d 944, 954-957 (8th Cir. 2003) (upholding jury verdict permitting untimely amendment to informal claim, where informal claim had been filed on "Automatic Extension Request" Form 4868, rather than Form 1040, and the IRS was on notice of claim because the "information held by the IRS described the refund sought with sufficient particularity to allow the IRS to investigate the claim"); PALA, Inc. v. United States, 234 F.3d 873, 877-79 (5th Cir. 2000) (holding that "an informal claim is sufficient if it is filed within the statutory period, puts the IRS on notice that the taxpayer believes an erroneous tax has been assessed, and describes the tax and year with sufficient particularity to allow the IRS to undertake an investigation") (citing Kales, 314 U.S. at 194); BCS Fin. Corp. v. United States, 118 F.3d 522, 524-25 (7th Cir. 1997) (citing Kales, 314 U.S. at 194); United States v. Commercial Nat'l Bank of Peoria, 874 F.2d 1165, 1170-76 (7th Cir. 1989) (permitting untimely amendment where taxpayers' attorney wrote a letter to IRS within limitations period, contesting the IRS's calculations); see also generally Martin v. United States, 833 F.2d 655, 660, 662-63 (7th Cir. 1987); Michael I. Saltzman, IRS Practice and Procedure ¶ 11.08[2] (2d student ed. 1991) ("IRS Prac. & Proc.").

filed an informal claim by writing "various notations and figures" on its timely filed income tax return. Id.; see also Newton v. United States, 163 F. Supp. 614, 619-20 (Ct. Cl. 1958) (finding informal refund claim based on written protests prior to payment); Night Hawk Leasing Co. v. United States, 18 F. Supp. 938, 941-42 (Ct. Cl. 1937) (finding informal refund claim based on objection on the back of a check paying the tax).

In Western Co. of North America v. United States, 323 F.3d 1024 (Fed. Cir. 2003), we recognized that the doctrine applies in circumstances in which the taxpayer's action involved a request for information. Western Co., 323 F.3d 1035. The IRS mistakenly assessed the taxpayer a "failure-to-file" ("FTF") penalty. Id.; see also Western Co. of N. Am. v. United States, 52 Fed. Cl. 51, 54 (2002). The taxpayer, unaware of what had caused this penalty, repeatedly requested information about the basis for the penalty but did not file a formal claim for a refund. The IRS documented this request in writing. 323 F.3d at 1035. We held that the substantial variance doctrine did not bar the taxpayer's refund claim because, during the limitations period, Western had "repeated[ly] request[ed] . . . information that would have allowed filing of an informed claim," and thereby "put the IRS on notice of its challenges to [the] false assessment." Id. at 1034-35.

The informal claim doctrine is of no assistance to the taxpayer here. Computervision's original complaint was formal, and contained no specific suggestion that non-DISC interest was in dispute. The complaint simply alleged that "Computervision is aggrieved by the defendant's failure to refund the interest attributable to the purported disqualification of [CVI] as a DISC." There was no further communication from Computervision to the IRS during the limitations period suggesting

that Computervision was asserting a claim for non-DISC interest. As the Court of Federal Claims found, "the original claim could not reasonably provide notice to the IRS of [the interest suspension claims]." Computervision, 62 Fed. Cl. at 324. Thus, Computervision's refund claim was not a valid informal claim.

B

A second exception exists known as the waiver doctrine. If the taxpayer files a timely formal claim but fails to include the specific claim for relief, the claim may nonetheless be considered timely if the IRS considers that specific claim within the limitations period. The IRS's consideration of the specific claim is held to be a waiver of the requirement of the regulation that the refund claim "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R. § 301.6402-2(b)(1).

The Supreme Court recognized the waiver doctrine in Memphis Cotton, 288 U.S. 62, and Angelus Milling Co. v. Commissioner, 325 U.S. 293 (1945). In Memphis Cotton, the Supreme Court found a waiver where (during investigation of the taxpayer's original claim and within the limitations period) the Commissioner discovered that the taxpayer was entitled to a refund on a specific ground, and notified the taxpayer that a refund would be made. 288 U.S. at 65, 73. After the limitations period expired, the Commissioner reversed its position and refused to grant the refund. The taxpayer then filed an amendment asserting its right to a refund. Id. at 65-66. The Court held that the amendment was timely because "[l]ong before the amendment the Commissioner had ascertained the facts and had even notified the taxpayer of the justice of its claims and of the ruling of the Bureau that adjustments would be made accordingly." Id. at 73.

In Angelus Milling, the Court held that the claim was untimely but stated that a waiver might be found where "[t]he evidence [is] clear that the Commissioner understood the specific claim that was made even though there was a departure from form in its submission," and "[t]he showing [is] unmistakable that the Commissioner has in fact seen fit to dispense with [the] formal requirements and to examine the merits of the claim." 325 U.S. at 297; see, e.g., United States v. Garbutt Oil, 302 U.S. 528, 533 (1938) ("[W]hile the Commissioner might have enforced the regulation and rejected a claim for failure to comply with it in omitting to state with particularity the grounds on which the claim was based, he was not bound to do so, but might waive the requirement of the regulation and consider a general claim on its merits.").

Various other courts and authorities have also recognized the waiver doctrine.[10] Our predecessor court also recognized the doctrine. In Consolidated Coppermines Corp v. United States, 296 F.2d 743, 744 (Ct. Cl. 1961), the Court of Claims held that a claim could be filed outside the limitations period if it raised a ground that the IRS had discovered, within the limitations period, during investigation of the original claim. The court found that "the amendment [filed outside the limitations period] merely made more definite the matters already within the knowledge of the Commissioner, which in the course of his investigation he actually did ascertain." 296 F.2d at 744 (Ct. Cl. 1961) (internal quotations and citations omitted); see U.S. Pipe & Foundry, 155 F.Supp. 231, 232-34 (Ct. Cl. 1957) ("[W]here the Commissioner determines and applies newly

---

[10] See, e.g., BCS Fin., 118 F.3d at 525-26; Herrington v. United States, 416 F.2d 1029, 1032 (10th Cir. 1969); IRS Prac. & Proc. ¶ 11.09[5]; Gerald A. Kafka & Rita A. Cavanagh, Litigation of Federal Civil Tax Controversies ¶ 16.02[1] (2d ed. 1997 & supp. 2005).

discovered or different grounds in computing the [taxpayer's liability] . . . [he] is precluded from thereafter denying the refund because the claim was incompatible with his regulations . . . ."); Nat'l Forge & Ordnance Co. v. United States, 151 F. Supp 937, 941 (Ct. Cl. 1957) (allowing taxpayer to assert a claim in court where "the claim for refund was sufficient to cause the Commissioner to consider the matters which are the basis of the present suit"); see also Union Pac. R.R., 389 F.2d at 442 (recognizing that "an item raised in litigation but not specifically adverted to in the [original] claim might be permitted if it is found that . . . the Commissioner considered that unspecified ground in reaching his decision on the items for which a refund was requested").

The central purpose of the waiver doctrine is "to prevent IRS agents from lulling taxpayers into missing the [limitations] deadline . . . ." BCS Fin., 118 F.3d at 526; PALA, 234 F.3d at 880 (quoting BCS Fin., 118 F.3d at 526). Where the taxpayer learns, within the limitations period, that the IRS has addressed the merits of a particular ground, and thus fails to file a timely formal claim raising that ground, the taxpayer's claim is not barred.

However, we agree with the Court of Federal Claims that the IRS cannot waive the requirements of its regulations by conduct outside of the limitations period. See Computervision, 62 Fed. Cl. at 327. In Garbutt Oil, the Commissioner considered the merits of a claim for a tax refund after the limitations period had expired. 302 U.S. at 533. The argument was that the Commissioner had waived the requirements of the regulation. The Court held that the claim was not timely, reasoning that "no officer of the government has power to waive the statute of limitations . . ." Id. at 534. This conclusion follows from the statute itself. Even the erroneous allowance of a refund that

is barred by the statute of limitations cannot prevent the government from recovering that allowance. Section 7405 allows the government to bring suit to recover an "erroneous" refund. 26 U.S.C. § 7405(a) & (b). Section 6514 provides that a refund is "erroneous" if it is made after the expiration of the limitations period and no timely claim was filed. 26 U.S.C. § 6514(a)(1).

Our predecessor court has similarly held that a waiver may not occur after the limitations period expires. In <u>Sicanoff Vegetable Oil Corp. v. United States</u>, 181 F. Supp. 265 (Ct. Cl. 1960), the Court of Claims refused to find a waiver where the taxpayer filed timely claim asserting one ground, the limitations period expired, and the Commissioner then by mistake considered a different second ground. The taxpayer filed an untimely amendment asserting the second ground. <u>Id.</u> at 268. The court held that the Commissioner "was not permitted by law to pay such a claim, and his consideration of it could not enlarge his legal authority." <u>Id.</u> at 268-69; <u>see also</u> <u>Melchior v. United States</u>, 145 F. Supp. 193, 194 (Ct. Cl. 1956).

The taxpayer relies on a few Excess Profits Tax cases decided in other jurisdictions for the proposition that the requirements of what is now 26 C.F.R § 301.6402-2(b)(1) may be waived after the statute of limitations has expired. <u>See</u> <u>Dale Distrib. Co. v. Comm'r</u>, 269 F.2d 444 (2d Cir. 1959); <u>Eisenstadt Mfg. Co. v. Comm'r</u>, 28 T.C. 221 (1957); <u>Martin Weiner Corp. v. Comm'r</u>, 26 T.C. 128 (1956).[11] Many of those

---

[11] The taxpayer also relies on <u>Schenley Indus., Inc. v. Comm'r</u>, 42 T.C. 129 (1964). There the Tax Court held that the IRS "waived" the specificity requirement by failing to timely raise the variance defense during litigation. <u>Id.</u> at 170; <u>see also</u> <u>Tucker v. Alexander</u>, 275 U.S. 228, 230-31 (1927). The issue in the present case is not whether the government can waive the variance defense through inaction during litigation, but rather whether it can waive the defense through administrative action.

cases involved special regulations under the Excess Profits provisions that imposed unusually detailed claim requirements. See Eisenstadt, 28 T.C. at 231-32; Dale, 269 F.2d at 445. Those decisions are not binding on this court, and are inconsistent with Garbutt Oil and Sicanoff if they are viewed as allowing a waiver after the limitations period. Moreover, as other circuits have recognized,[12] expanding the scope of the waiver doctrine as the taxpayer urges would appear to be inconsistent with more recent Supreme Court authority holding that actions of regulatory authorities cannot either extend the statute of limitations under section 6511 by equitable tolling or create an estoppel against the government. See Brockamp, 519 U.S. 347, 352 (holding that equitable tolling does not apply to toll section 6511); Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 434 (1990) (holding that conduct of a government agent could not estop the government from denying benefits not otherwise permitted by law). The taxpayer has not called our attention to any post-Brockamp or Richmond decisions in other jurisdictions that have applied the waiver doctrine to actions by the IRS taking place after the running of the limitations period.[13]

Here there is no contention that the IRS considered the taxpayer's claim for non-DISC interest within the limitations period. Rather Computervision contends that the IRS waived the specificity requirement nine years after the limitations period expired in

---

[12]     See BCS Fin., 118 F.3d at 525 (noting that the exceptions are in tension with United States v. Brockamp, 519 U.S. 347 (1997), and other Supreme Court authority); PALA, 234 F.3d at 880 n.37 ("We share the Seventh Circuit's concern that the Supreme Court's decision in [Brockamp] calls into question the continuing viability of the waiver/estoppel strand of the informal claim doctrine.").

[13]     But cf. Kaffenberger, 314 F.3d 944, 953 (8th Cir. 2003) (holding that explicit waiver authorized under § 6501 allows the IRS and the taxpayer to agree to extend the assessment period after statute of limitations expires).

an August 17, 2000, letter from the IRS to Computervision that included a set of interest computations applying interest suspension to the non-DISC interest. The letter also stated that "Revenue ruling 99-40 (Sequa) [interest suspension] is applied regarding the credit elect to 1983. No claim is necessary." J.A. at 1405. Computervision cannot benefit from the waiver doctrine because the IRS consideration occurred long after the expiration of the limitations period.

C

A third exception, which we refer to as the general claim doctrine, exists where (1) the taxpayer has filed a formal general claim within the limitations period; and (2) an amendment is filed outside the limitations period that makes the general claim more specific. The Supreme Court described this exception in United States v. Andrews, 302 U.S. 517, 524 (1938):

> Where a claim which the Commissioner could have rejected as too general, and as omitting to specify the matters needing investigation, has not misled him but has been the basis of an investigation which disclosed facts necessary to his action in making a refund, an amendment which merely makes more definite the matters already within his knowledge, or which, in the course of his investigation, he would naturally have ascertained, is permissible.

The Supreme Court thus recognized that an amendment making a general claim more specific may be permissible even when filed outside the limitations period.

The Supreme Court applied the general claim doctrine in United States v. Factors & Fin. Co., 288 U.S. 89 (1933). There the IRS performed an audit of the taxpayer, but the audit was incomplete when the statute of limitations expired. In order to preserve any claims resulting from the audit, the taxpayer filed a general claim before the limitations period expired requesting a refund of all the taxes it had paid. The claim

did not set forth any specific ground, and explained that its purpose was "to permit the Commissioner to refund to deponent any excess paid over taxes actually found to be due." Id. at 91. The Court held that the taxpayer's subsequent amendment was not barred by the statute of limitations. Id. at 96. "[A] general claim for refund, not specifying grounds, is subject to amendment until final rejection irrespective of a limitation running in the interval." Id. at 93 (citing Memphis Cotton Oil, 288 U.S. 62). Similarly, in Memphis Cotton the Court held that an amendment to a general claim, filed outside the limitations period, was timely where the original claim merely stated the amount of the tax paid, the correct tax and the amount of overpayment, but did not specify the facts or reasons justifying a refund. 288 U.S. at 64-65, 71.

Our predecessor court recognized the general claim doctrine in at least one case, Cochran v. United States, 62 F. Supp. 872, 872 (Ct. Cl. 1945), where the court permitted an untimely amendment to a general claim that requested refunds relating to "losses not claimed." The court held that the amendment "perfected and made specific" the original general ground. Id. at 875.

However, the general claim doctrine only applies when the original claim is general rather than specific. In United States v. Henry Prentiss & Co., 288 U.S. 73 (1933), the Supreme Court held that where the original timely claim asserted a specific ground, it could not be amended out of time to claim a new basis for relief unrelated to the original claim. Id. at 83. Likewise in Andrews the Court found that an amendment to a claim raising a specific ground was untimely because "[t]he very specification of the items of complaint would tend to confine the investigation to those items and there is no evidence that the examination was more extended." 302 U.S. at 525.

Here Computervision's original claim was not general but specific. It contained a specific request for DISC-related interest which claimed "the portion of the interest paid that is attributable to the [DISC disqualification issue]."[14] J.A. at 1225.

To be sure the original 1989 claim included a secondary, general claim. The general claim was a boilerplate provision stating:

> Computervision claims as a basis for the refund of the interest paid with respect to its 1982 taxable year such other grounds as are shown to be appropriate by the tax returns, books and records and the Examination Report and related Protest of Computervision and [CVI] for their respective tax years ended December 31, 1982, and January 31, 1983.

J.A. at 1228. In Andrews the Supreme Court rejected the argument that the general claim doctrine was applicable under such circumstances. As here, the taxpayer's claim in Andrews "not only called for redress of a specified grievance but demanded general relief as well." 302 U.S. at 525. The Court held that the taxpayer's amendment was barred by the statute of limitations, reasoning that "[t]he very specification of the items of complaint would tend to confine the investigation to those items and there is no evidence that the examination was more extended." Id. at 526. Thus Computervision's untimely claim for non-DISC interest does not meet the requirements of the general claim doctrine.[15]

## D

Where the general claim doctrine is inapplicable because the original claim was

---

[14] Computervision's original claim also included an "alternative" claim regarding the computation of the so called "DISC Commission" paid by Computervision to CVI.

[15] In any event, as discussed immediately below, the amendment had to be filed while the IRS still had jurisdiction over the claim, and the IRS no longer had jurisdiction once the taxpayer filed the refund suit.

not general but specific, a related doctrine, the germaneness doctrine, may allow relief. This fourth exception only applies where the taxpayer (1) files a formal claim within the limitations period making a specific claim; and (2) after the limitations period but, while the IRS still has jurisdiction over the claim, files a formal amendment raising a new legal theory--not specifically raised in the original claim--that is "germane" to the original claim, that is, it depends upon facts that the IRS examined or should have examined within the statutory period while determining the merits of the original claim. Unlike the waiver doctrine, the inquiry here is not whether the particular legal theory for recovery has been considered by the IRS during the limitations period but whether the underlying facts supporting that legal theory were discovered or should have been discovered by the IRS in considering the original claim during the limitations period.

The Supreme Court recognized this exception in Bemis Brothers Bag Co. v. United States 289 U.S. 28 (1933). In Bemis, the taxpayer filed a timely claim for a refund with the Commissioner, arguing that the Commissioner should allow a so-called "special assessment" for determining "invested capital" for excess profits tax purposes because invested capital could not be calculated with precision. Id. at 31. To support this claim, the taxpayer urged that the precise values of certain items could not be ascertained. The Commissioner denied the claim. After the limitations period expired but before the refund suit was filed, the taxpayer filed an amendment specifically urging that the items should be included in invested capital because they could be calculated, and that the tax should be recalculated on that basis. Id. at 31-32. Thus, the taxpayer's amendment did not require inquiry into a new set of facts, but simply adapted the form of relief to the facts which would have to be examined during investigation of the original

claim. The Court held that "the claim as amended does not differ in matter of substance from the claim as first presented," because "[i]f the [Commissioner] found that there had been omissions, but that he was able to his own satisfaction to identify and appraise them, he would learn in the process that there had been an undervaluation of invested capital, and that the assessment of the tax was correspondingly erroneous." Id. at 35.

This doctrine also was described in the Supreme Court's decision in Andrews. There, in addition to holding that the general claim was inadequate because it was accompanied by a specific claim, the court held the specific claim was inadequate because it was not "germane" to the later asserted ground. Andrews, 302 U.S. at 524.

Other circuits have also recognized this exception.[16] Our predecessor court has also recognized this doctrine. In Addressograph, for example, the Court of Claims held that an amendment filed outside the limitations period was "proper and germane" because investigation of the merits of the original claim "would have necessarily involved a consideration of [the facts the amendment depended on]." Addressograph-Multigraph Corp. v. United States, 78 F. Supp. 111, 122-23 (Ct. Cl. 1948). The amendment "merely made more definite the matters already within the knowledge of the Commissioner, which in the course of his investigation he actually did ascertain." Id.

---

[16] See, e.g., United States v. Ideal Basic Indus., Inc., 404 F.2d 122, 124 (10th Cir. 1968) (permitting amendment where "'facts upon which the amendment is based would necessarily have been ascertained by the commissioner in determining the merits of the original claim'") (quoting Pink v. United States, 105 F.2d 183, 187 (2d Cir. 1939)); Pink, 105 F.2d 183, 187 (citing Bemis Bros. Bag, 289 U.S. 28); see also United States v. Henderson Clay Prods., 324 F.2d 7, 18 (5th Cir. 1963) (limitations requirement satisfied for refund claim based on erroneous computation of depletion deduction where amended claim "assert[ed] no other ground for recovery than its original" because "[b]oth are based upon 114(b)(4)(B), and the amended complaint merely takes account of a definitive construction of that subsection which was handed down between the date of the claims and the date of trial."); 113 Am. Law Reports 1291 sec. II(e) (1938 & supp.

Similarly, in <u>Consolidated Coppermines</u> the court observed that "[w]here the amendment is inconsistent with the former claim, or has injected new and unrelated matter, we have not allowed it, but where it is germane to the original claim and sets up matter discovered in the course of the investigation of the original one, we have allowed it." 296 F.2d at 745.

Here Computervision's interest suspension claim as to non-DISC issues cannot benefit from the germaneness doctrine for two separate reasons. First, the amended claim was not in fact germane to the original claim. The original claim did not merely claim an identical amount under a different theory. It claimed a different amount under a different theory. Moreover, as the Court of Federal Claims concluded, "the interest suspension relief that plaintiff is seeking is not a necessary step in completing the interest computation that was explicitly placed at issue in the Original Refund Claim . . . ." <u>Computervision</u>, 62 Fed. Cl. at 319 (internal quotation marks omitted). The IRS did not discover the interest suspension claim as a result of its investigation of the original claim, but rather as a result of Computervision's May 2, 2000, letter raising the interest netting issue. Indeed, Computervision admitted that even as of late 1999, it was unaware that an interest suspension claim was available. The IRS consideration of the claim "was simply a mistake." <u>Id.</u> at 321 n.24. The determination of the interest attributable to the DISC deficiency did not require the IRS to compute non-DISC interest under the interest suspension theory. Even if the IRS possessed the facts necessary to make this computation, "it is not enough that somewhere under the Commissioner's roof is the information which might enable him to pass on a claim for refund." <u>Angelus</u>

2006); 15 <u>Mertens Law of Federal Income Taxation</u> § 58:38 (1991 & supp. 2006).

Milling, 325 U.S. at 299 (rejecting argument that a taxpayer's refund claim, together with the refund claim of another taxpayer, supplied the IRS with the information needed to determine the merits of an untimely claim).[17]

Second, as the Court of Federal Claims held here, the formal amendment was itself filed too late. Computervision, 62 Fed. Cl. at 328-29. The formal amendment, if filed after the expiration of the limitations period, must be filed while the original claim is still being considered by the IRS. This requirement "is designed both to prevent surprise and to [permit] . . . an administrative investigation and determination." Union Pacific R.R., 389 F.2d at 442. Thus an amendment is ineffective if filed after the original claim has either been allowed or disallowed by the IRS. For example, in Union Pacific, the Court of Claims concluded that "[t]he disposition of a taxpayer's refund claim by allowance of the amount requested in full, however, precludes an amendment asserting an additional amount after the expiration of the statutory period for refund." Id. at 447 (emphasis added). So too in Allstate Insurance Co. v. United States, the Court of Claims held that "[i]t is a rule of long standing that once a refund claim has been disallowed, it is not subject to amendment." 550 F.2d 629, 633 (emphasis added); see also 15 Mertens Law of Federal Income Taxation § 58:38 ("Although amendments to a properly filed claim can be made even though the statutory period for filing a claim has expired, the amendment must be germane, and must be presented before the original claim is resolved."); Memphis Cotton, 288 US at 72 (observing that if "at the time of [the]

<hr />

17  See also Andrews, 302 U.S. at 524 ("[A] claim which demands relief upon one asserted fact situation, and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim.").

amendment the claim had been finally rejected," then "the proceeding [had] thereby ended" and the amendment "was too late").

The same rule necessarily applies where the taxpayer elects to terminate the IRS's jurisdiction by filing a suit for refund. While the taxpayer has the right to file a refund suit if the IRS has not acted on the claim for six months, the IRS's jurisdiction over the claim necessarily terminates on the date a refund suit is filed. See Exec. Order No. 6166, § 5 (June 10, 1933), reprinted in 5 U.S.C. § 901 (2000).[18] The IRS no longer has the authority to resolve the claim, and therefore is without power to "allow" or "disallow" it.

We recognize that, as the taxpayer urges, two of our sister circuits have adopted a different rule, holding that an amendment is effective for purposes of the germaneness doctrine after the IRS has lost jurisdiction over the claim. Mutual Assurance Inc. v. United States, 56 F.3d 1353 (11th Cir. 1995); St. Joseph's Lead Co. v. United States, 299 F.2d 348 (2d Cir. 1962) (finding amendment filed after commencement of suit was timely). Thus, for example, the Eleventh Circuit in Mutual Assurance quoted the Court of Claims' decision in Union Pacific holding that the amendment could not be filed after the allowance of the original claim, but held that

---

[18]     Section 5 of Executive Order 6166 is entitled "Claims By or Against the United States," and reads as follows:

> As to any case referred to the Department of Justice for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense, now exercised by any agency or officer, is transferred to the Department of Justice.

Exec. Order No. 6166, § 5 (June 10, 1933), reprinted in 5 U.S.C. § 901 (2000); see also Computervision, 62 Fed. Cl. at 326 n.26 (citing Exec. Order No. 6166, § 5).

"[Union Pacific] is not binding precedent in this circuit." Mutual Assurance, 56 F.3d at 1357. Unlike the Eleventh Circuit we are, of course, bound by the precedent of the Court of Claims. S. Corp. v. United States, 690 F.2d 1368, 1369 (Fed. Cir. 1982) (en banc) (the Federal Circuit is bound by decisions of the Court of Claims "announced before the close of business on September 30, 1982").

In any event it seems to us that the Court of Federal Claims was correct here in suggesting the rule adopted by our sister circuits in St. Joseph's Lead and Mutual Assurance is untenable since it would allow amendments submitted after filing the refund suit to extend the limitations period indefinitely. Computervision, 62 Fed. Cl. at 328-29. Here Computervision filed its original refund suit in the Court of Federal Claims on April 4, 1990, and then filed an amendment with the IRS on April 4, 2002, in which it claimed non-DISC interest under the interest suspension theory. Computervision's amendment in 2002, 12 years after filing suit and after the IRS's jurisdiction had been terminated by the filing of the refund suit, came too late.

Thus this exception does not apply to Computervision's claim.

E

For the foregoing reasons, Computervision's interest suspension claim must fail. There was no informal claim, and the waiver, general claim and germaneness doctrines are also inapplicable.

II

The taxpayer also asserts that it was entitled to recovery of the non-DISC interest under the theory of interest netting.

Under section 6621(d), the IRS applies a net interest rate of zero to overlapping

underpayments and overpayments of tax. Section 6621(d), enacted on July 22, 1998, provides:

> Elimination of interest on overlapping periods of tax overpayments and underpayments.—To the extent that, for any period, interest is payable under subchapter A and allowable under subchapter B on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.

26 U.S.C. § 6621(d) (2000). Computervision argues that its overpayment for the 1982 year, which arose on March 15, 1983, the due date of its 1982 return, should be netted against the subsequently determined underpayment for 1982. Although the 1982 overpayment was credited towards subsequent years, it was not needed to pay liability for those years. Thus, according to Computervision, the overpayment retained its status as a 1982 overpayment until August 2, 1985, when it was finally refunded.

The government does not claim that the taxpayer's failure to file the claim within the limitations period is a bar, because the interest netting statute provides for retroactive relief under certain circumstances. However, the government asserts that the doctrine is inapplicable for a number of reasons. We need to address only one because we agree with the government that under our decision in Federal National Mortgage Association v. United States, 379 F.3d 1303 (Fed. Cir. 2004) ("FNMA"), the taxpayer has failed to satisfy the requirement for retroactive application of the statute.

The interest Computervision contests arose prior to the enactment of section 6621(d). Section 6621(d) applies retroactively only under certain circumstances.[19] Specifically, section 6621(d) is "[s]ubject to any applicable statute of limitation not

---

[19] The requirements for retroactive application of interest netting are

having expired with regard to either a tax underpayment or a tax overpayment" as of July 22, 1998. Pub. L. No. 105-277, § 4002(d), 112 Stat. 2681 (1998), <u>amending</u> Pub. L. No. 105-206, § 3301(c)(2), 112 Stat. 741 (1998). In <u>FNMA</u>, we interpreted this language to require that the statute of limitations must be open with respect to both the underpayment and the overpayment.

A claim for a refund of paid underpayment interest is barred if not filed within the later of three years from the date the return was filed or two years from the date the interest was paid. 26 U.S.C. § 6511. The underpayment interest in this case is the 1982 deficiency interest, which was paid on April 28, 1989. The limitations period for the underpayment closed two years later, on April 28, 1991 -- several years before the July 22, 1998, date specified in section 3301(c)(2).

A claim for interest from overpayments must be filed within six years after the due date of the return that gave rise to the overpayment interest. <u>See</u> 28 U.S.C. § 2401 (2000). In Computervision's case, the overpayment limitations periods expired on March 15, 1989, for the 1982 tax year; March 15, 1990, for the 1983 tax year; and August 2, 1991, for the 1984 tax year. All these periods were closed as of the July 22, 1998, critical date specified in § 3301(c)(2). Computervision's argument that the limitations periods remained open indefinitely while its DISC claim was being litigated is without merit.

Thus, as of July 22, 1998, the statute of limitations was closed with respect to both underpayment and overpayment interest, and thus Computervision's claim for interest netting fails to satisfy the requirements for retroactive application of the statute.

---

explained in Revenue Procedure 99-43. Rev. Proc. 99-43, 1999-2 C.B. 579.

## CONCLUSION

For the foregoing reasons, the judgment of the Court of Federal Claims is

AFFIRMED.

## COSTS

No costs.