Lawrence D. **PENNONI,** Plaintiff,

v.

The **UNITED STATES,** Defendant.

No. 06–861T.

United States Court of Federal Claims.

Feb. 26, 2009.

---

**25.** This represents the combined price of the Analytics Core and Education Product under the bridge contract.

Jennifer Hunter Walz, Houston, TX, for plaintiff.

Joseph B. Syverson, U.S. Department of Justice, Washington, DC, with whom were Nathan J. Hochman, Assistant Attorney General and Steven Frahm, Chief, Court of Federal Claims Section, for defendant.

## OPINION

FIRESTONE, Judge.

Pending before the court are cross-motions for summary judgment by the United States ("government" or "defendant") and the plaintiff, Lawrence D. Pennoni ("plaintiff"), pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). In this action, the plaintiff seeks to recover sums which he agrees were erroneously refunded to him by the Internal Revenue Service ("IRS") but which he claims were then "illegally exacted" by the IRS through levies on his bank account and wages. The plaintiff claims that the IRS was required to follow the procedures for collecting an erroneous non-rebate refund and could not rely on its tax collection methods of recovery.[1] On this ground, the plaintiff claims that the government must repay him the amount of the erroneous refund together with the penalties and interest taken by the government when it levied his account and wages. The plaintiff asserts that the court has jurisdiction to hear his case under an "illegal exaction" theory. In *Pennoni v. United States,* 79 Fed.Cl. 552,

---

1. Specifically, the plaintiff now contends that

[t]he only avenues available to the IRS for it to recover the erroneous non-rebate refund from Plaintiff [were] instituting suit under [26 U.S.C.] § 7405(b) [(2000)] in a U.S. District Court within two years from the issuance of the erroneous non-rebate refund and/or referral of the debt to the Financial Management Service ("FMS"), a bureau of the U.S. Treasury Department authorized to collect delinquent non-tax debts under 31 C.F.R. Part 285. Pl.'s Cross–Mot. at 8; *see also* Pl.'s Cross–Mot. at 7, 20 ("Because the erroneous non-rebate refund did not constitute a tax, it could not be assessed and collected under the [Internal Revenue] Code.... The only provision of the [Internal Revenue] Code relevant here is the limitations period of [26 U.S.C.] § 7405....").

The court notes that this marks a change from the plaintiff's previous position. For example, in his amended complaint, the plaintiff alleged that

[t]he amounts levied ... were wrongfully collected by the [IRS] under the internal revenue laws of Title 26 of the United States Code and contrary to the provisions of Section 7405 of Title 26 of the United States Code and the deficiency and assessment procedures under Title 26 of the United States Code.

Am. Compl. ¶ 12. Similarly, in defending against the government's prior motion to dismiss, the plaintiff stated that

[t]he IRS cannot use any of its collection powers to recover an erroneous refund unless and until it either (1) files suit under [Internal Revenue] Code § 7405(b) within the two-year limitations period under [Internal Revenue] Code § 6532(b), or (2) institutes deficiency and assessment procedures under the [Internal Revenue] Code relating to the erroneous refund within the limitations period for assessment applicable to the return for the tax year which the erroneous refund relates to.

Pl.'s Resp. to Mot. to Dismiss at 9–10 *(citing Stanley v. United States,* 35 Fed.Cl. 493 (1996), *aff'd,* 140 F.3d 1023 (Fed.Cir.1998)); *see also Pennoni v. United States,* 79 Fed.Cl. 552, 555 (2007).

561–62 (2007), this court agreed with the plaintiff that the court had jurisdiction over the plaintiff's case under an "illegal exaction" theory and denied the government's motion to dismiss the case for lack of jurisdiction. The court held that the plaintiff had alleged sufficient facts to claim that his 1998 tax liability had been extinguished and that the erroneous refund did not give rise to a tax owed. *Pennoni*, 79 Fed.Cl. at 558–60. As a result, the court held that the plaintiff could bring suit in this court under an "illegal exaction" theory without having to first file an administrative refund claim under 26 U.S.C. § 7422(a) (2000). *Pennoni*, 79 Fed. Cl. at 556–60.

The pending cross-motions were filed following the U.S. Supreme Court's recent decision in *United States v. Clintwood Elkhorn Mining Co. ("Clintwood Elkhorn")*, —— U.S. ——, 128 S.Ct. 1511, 170 L.Ed.2d 392 (2008), in which the Supreme Court addressed the scope of the refund claim requirement under section 7422.[2] The government contends that, in *Clintwood Elkhorn*, the Supreme Court clarified that section 7422 extends to claims for "any sum" alleged to have been wrongfully assessed or collected under the internal revenue laws and that the plaintiff's claim must be dismissed for lack of jurisdiction on the grounds that the plaintiff has failed to meet the prerequisites of section 7422. The plaintiff argues in response that *Clintwood Elkhorn* applied only to taxpayers seeking refunds relating to their taxes and that because in this case the plaintiff alleges that the IRS illegally exacted a non-tax debt, the plaintiff's claim is not subject to the requirements of section 7422. In the alternative, the plaintiff argues that he has satisfied the prerequisites of section 7422 by filing an informal refund claim that was never formally rejected by the IRS. For the reasons discussed below, the government's motion for summary judgment is **GRANTED,** and the plaintiff's cross-motion is **DENIED.**

## BACKGROUND

The following background facts are undisputed unless otherwise noted. The plaintiff is an attorney who has practiced in the areas

of tax, international tax, and corporate mergers and acquisitions. Def.'s Proposed Findings of Uncontroverted Fact ("DPFUF") ¶ 1. In the 1998 tax year, the plaintiff received $247,072.02 in income, from which $75,000.00 was withheld to satisfy his federal income tax liabilities. DPFUF ¶¶ 2–4. The plaintiff was granted an extension of time to August 15, 1999 to file his federal income tax return. *Id.* at ¶ 5. The plaintiff did not file a 1998 federal income tax return on or before August 15, 1999. *Id.* at ¶ 6. On February 16, 2001, the IRS sent the plaintiff a letter entitled "Proposed Individual Income Tax Assessment," in which the IRS calculated the plaintiff's individual income tax liability, including penalties and interest, for 1998 and indicated a balance due in the amount of $17,764.53, to be assessed if he did not respond within thirty days. *Id.* at ¶¶ 7–11; Syverson Decl. Ex. 2. The letter advised the plaintiff that one of the responses available to him was to submit a Form 1040, Individual Federal Income Tax Return, for 1998 within the thirty-day period. DPFUF ¶ 11. More than thirty days later, on April 18, 2001, the IRS received a Form 1040 for 1998 from the plaintiff, in which he claimed he was owed a refund of $3,035.33 after a withholding credit of $75,000.00 was applied. *Id.* at ¶¶ 12–13.

On June 1, 2001, the IRS sent the plaintiff a Notice of Deficiency for his 1998 federal individual income tax year. *Id.* at ¶ 14. In the Notice of Deficiency, the IRS determined that the plaintiff had a tax deficiency of $86,316.00 and owed penalties totaling $3,982.79. *Id.* at ¶ 15; *see also id.* at 10. The plaintiff filed a petition with the United States Tax Court on July 19, 2001, challenging the IRS's determination of his 1998 tax liability. *Id.* at ¶¶ 16–17. After the petition was filed, the plaintiff worked with Houston IRS Appeals Officer Dennis Quinn to negotiate a settlement. DPFUF ¶¶ 21, 64; Pl.'s Resp. to DPFUF ¶ 21. On or about February 14, 2002, the plaintiff and the Commissioner of Internal Revenue entered into a settlement stipulation and draft decision concerning the plaintiff's petition. DPFUF ¶¶ 22, 24. The draft decision established a statutory deficiency of $72,199.00 for the

---

**2.** Unless otherwise noted, all section references are to Title 26 of the United States Code.

plaintiff's 1998 federal income tax year and provided that, after the application of a $75,000.00 withholding credit, the plaintiff had made an overpayment of his federal income tax liability for 1998 of $2,801.00. *Id.* at ¶¶ 25–26. On February 15, 2002, the Tax Court docketed the settlement stipulation and entered the draft decision without alteration ("the Tax Court decision"). *Id.* at ¶¶ 23, 29.

The IRS Certificate of Assessments, Payments, and Other Specified Matters ("Certificate") regarding the plaintiff's 1998 federal individual income taxes indicates that, on September 11, 2002, the plaintiff was assessed $72,960.00 in income tax for the 1998 tax year, DPFUF ¶ 30; Syverson Decl. Ex. 1 at 4, which was slightly more than the amount of the tax liability established in the Tax Court proceeding. Cf. DPFUF ¶ 25. However, on October 14, 2002, the IRS issued the plaintiff an erroneous refund check in the amount of $80,166.57.[3] DPFUF ¶ 31–32. It is not disputed that the plaintiff received and negotiated the check. Pl.'s Resp. to DPFUF ¶ 32. It is also not disputed that the $80,166.57 erroneous refund was unrelated to a redetermination of the plaintiff's income tax liability for 1998 by the IRS. *Id.* at ¶ 33. Nor is it disputed that the IRS treated the erroneous refund as creating a balance due in the plaintiff's account for his 1998 individual income tax year in the amount of $81,637.64. *Id.* at ¶ 34.

The IRS did not issue any notice of deficiency or assessment concerning the erroneous refund. Pl.'s Proposed Findings of Uncontroverted Fact ("PPFUF") ¶ 5. However, the IRS did send the plaintiff a "Notice of Balance Due" on November 25, 2002 and a

"Statutory Notice of Intent to Levy" ("Notice of Intent to Levy") on December 30, 2002. DPFUF ¶¶ 35–36; Syverson Decl. Ex. 1 at 9. The Notice of Intent to Levy stated, *inter alia*,

> Our records indicate that you haven't paid the amount you owe. The law requires that you *pay your tax* at the time you file your return. This is your notice, as required by *Internal Revenue Code Section 6331(d)*, [26 U.S.C. § 6331(d) (2002),][4] of our intent to levy (take) any state tax refunds that you may be entitled to if we don't receive your payment in full. In addition, we will begin to search for other assets we may levy. We can also file a *Notice of Federal Tax Lien*, if we haven't already done so.

Pennoni Decl. (Docket No. 15) Ex. 3 (emphasis added). The Notice of Intent to Levy stated that the plaintiff's then-current balance for "Form: 1040A" for "Tax Period: 12–31–1998" was $83,818.35, including $736.95 in penalties and $1,443.76 in interest. DPFUF ¶ 37.

The IRS then issued a "Final Notice of Intent to Levy and Notice of Your Right to a Hearing" ("Final Notice") on May 29, 2003, which stated, "We've written to you before asking you to contact us about your *overdue taxes*. You haven't responded or paid the amounts you owe.... We are authorized to *collect overdue taxes* by ... levying." Pennoni Decl. Ex. 4 (emphasis added). The Final Notice stated that the IRS "intend[ed] to levy on [the plaintiff's] property or [his] rights to property 30 days after the date of this letter" unless the plaintiff paid the full amount owed,[5] made payment arrangements,

---

**3.** Prior to the issuance of the erroneous refund, a total of $3,311.85 was transferred as an overpayment credit from the plaintiff's account for his 1998 individual income tax year to the plaintiff's account for his 1999 individual income tax year. DPFUF ¶ 47.

**4.** Section 6331(d) states that "[l]evy may be made under [26 U.S.C. § 6331(a) (2002)] upon the salary or wages or other property of any person with respect to *any unpaid tax* only after the Secretary has notified such person in writing of his intention to make such levy." (emphasis added). Section 6331(a), in turn, states in pertinent part that,

> [i]f any person *liable to pay any tax* neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to *collect such tax* ... by levy upon all property and rights to property ... belonging to such person or on which there is a lien provided in this chapter for the *payment of such tax*.

(emphasis added).

**5.** As of the Final Notice, the then-current "Assessed Balance" for "Type of Tax: 1040A" for the "Period Ending: 12–31–1998" was $81,637.64, with $8,246.42 in "Statutory Addi-

or "[a]ppeal[ed] the intended levy on [his] property by requesting a Collection Due Process hearing within 30 days from the date of this letter." *Id.* The Final Notice also stated, "We've enclosed two publications that explain how we *collect past due taxes* and your collection appeal rights, as required under Internal Revenue Code sections 6330[, 26 U.S.C. § 6330 (2000),] and 6331. In addition, we've enclosed a form that you can use to request a Collection Due Process hearing." Pennoni Decl. Ex. 4. It is not disputed that the plaintiff did not request a Collection Due Process hearing. Pl.'s Resp. to DPFUF ¶ 41.

From approximately July 31, 2003 through September 15, 2004, the IRS garnished plaintiff's wages in a series of levies totaling approximately $101,539.06.[6] Pl.'s Resp. to DPFUF ¶¶ 43, 45. In addition, the IRS levied plaintiff's bank account in the approximate amount of $2,921.98.[7] Pl.'s Resp. to DPFUF ¶¶ 43–44. According to the Certificate, the plaintiff was also assessed interest and penalties for "failure to pay tax" with respect to his 1998 individual income tax in the amount of $14,771.47.[8] DPFUF ¶ 42; Syverson Decl. Ex. 1 at 8–10.

After the collection process began, on September 9, 2003, the plaintiff sent a facsimile to "IRS–Memphis" which included a cover sheet stating his name ("Larry Pennoni"), social security number, and the phrase "Attn: Reconsideration." Pennoni Decl. Ex. 7 at 2. The "MESSAGE" portion of the cover sheet stated, "Attached are Tax Court decision documents establishing that there was no deficiency for 1998. Thus, Levy on Bank and garnishment of wages is wrongful and should

be withdrawn ASAP!!" *Id.* Attached to the facsimile were a number of documents relating to the proceedings before the Tax Court. *Id.* at 3–12. According to the uncontested declaration of Mr. Pennoni, prior to submitting the facsimile on September 9, 2003, Mr. Pennoni

> contacted the IRS Memphis Service Center several times at the phone number set forth in the Notice of Intent to Levy and explained to the IRS that no tax was due as tax had already been assessed after a Tax Court decision was rendered and the tax had been fully paid by withholding tax. [He] demanded that levies cease and demanded the return of all monies previously levied. . . . [T]he IRS told [Mr. Pennoni] to send to them at a fax number they gave [him] all of [his] documents supporting [his] assertion that all [his] 1998 taxes had been paid for reconsideration by the IRS.

Pennoni Aff. Decl. (Docket No. 38–2) ¶ 5. The purpose of the September 9, 2003 facsimile, according to Mr. Pennoni, was "for the IRS to consider whether to withdraw the levies and return the monies previously levied." *Id.* at ¶ 6.

Mr. Pennoni's September 9, 2003 facsimile was forwarded from the IRS Memphis Service Center to the Houston Appeals Office, where it was reviewed by Dennis Quinn, who had worked on the settlement of the Tax Court proceedings regarding the plaintiff's 1998 tax liability. DPFUF ¶¶ 63–64. Mr. Quinn sent a letter to the plaintiff, dated November 14, 2003, which was labeled "In Re: Income" and stated:

> Appeals has received your 1998 tax case as an Audit reconsideration case. Since your

---

tions," for a "Total Amount Due" of $89,884.06. Pennoni Decl. Ex. 4 at 3.

**6.** Several of the individual levy and wage garnishment amounts, sources, and dates are disputed. *See* Pl.'s Resp. to DPFUF ¶¶ 43, 45, 49; Def.'s Additional PFUF ¶¶ 73–74; Def.'s Mot. to Correct Record at 2. However, because the court finds, as discussed below, that it lacks jurisdiction over the plaintiff's claim, the court does not have occasion to resolve the disputes over the amounts of money levied.

**7.** *See* footnote 6, *supra.*

**8.** The plaintiff disputes the interest and penalties, arguing that because the Certificate is "on its

face without foundation and not sufficient factual evidence that penalties and interest were assessed for Plaintiff's 1998 tax year," it should be excluded. Pl.'s Resp. to DPFUF ¶ 42. The court agrees with the government that Federal Rule of Evidence ("FRE") 902(4) provides that a certified public record, such as the Certificate in this case, does not require "extrinsic evidence of authenticity as a condition precedent to admissibility," and that FRE 803(8) makes such public records admissible notwithstanding the general rule against admission of hearsay. Accordingly, the court will not exclude DPFUF ¶ 42 as the plaintiff has requested.

case was previously closed with signed decision documents in Tax Court, neither Appeals nor District Counsel really have any jurisdiction over this case. In addition, with decision documents being documents of finality, there are no remaining appeals rights for you.

However, Appeals has looked at your file, transcript data, etc. You have said that the Tax Court decision documents show that "there was no deficiency for 1998". *That is not correct.* There was a statutory tax deficiency[ ](agreed to by the parties) of $72,199.00. However, with the application of the withholding credit amount of $75,000.00 to you, the net amount owed was $2801.00.

*Both the deficiency amount of $72,199.00 and the credit amount of $75,000.00 needed to be assessed. And they were assessed. But a problem was created, it seems, when the deficiency amount was assessed AFTER the withholding credit amount.*

So, in the 40th week of 2002 you were sent a refund check for $80,166.57. This amount comes from the withholding credit amount of $75,000.00 plus $8678.42 in interest, and less two amounts of $3494.12 and $17.73. These two latter amounts went to the 1999 year to pay off amounts owing there.

*So then, just before the deficiency amount was assessed[ ](it was done one week later), you received a refund of $80,166.57* instead of the $2801.00 to which you were entitled. Every indication from the record is that you were sent that refund amount and that it was cashed.

*When the deficiency amount finally was assessed, you would, of course, have an amount owing at that time. The currently owed amount on your account[ ](as of 11–5–03) is $58,238.93.* This comes from a deficiency amount of $72,960.00 [9] plus $8677.64 in interest[ ](interest no longer allowed and is to be re-captured), less the six payments of varying amounts you have recently paid....

Thus, based on the file and transcript records here, it would seem that *you clearly have an amount owing. If so, the levy action would not appear to be wrong.*

In any event, the matter of collection, and the matter of the October 2002 refund to you are items that need to be resolved between you and the Memphis Service Center. The Houston Appeals Office has no jurisdiction or standing on this affair.

Pennoni Decl. Ex. 11 (emphasis added).

More than three years after Mr. Quinn's November 14, 2003 letter, on December 15, 2006, the plaintiff filed a complaint in this court. The original complaint did not allege that the plaintiff had filed a claim for refund with the IRS for the 1998 tax year with regard to the levied amounts. The government moved to dismiss the complaint for lack of jurisdiction on the grounds that the plaintiff had not filed a refund claim with the IRS before filing suit, as required by section 7422(a). Thereafter, on May 17, 2007, the plaintiff filed a first amended complaint in which he added a new allegation stating that his September 9, 2003 facsimile to the IRS constituted "a valid claim under the informal claim doctrine because it was timely filed in writing and in a manner that gave the IRS adequate notice of Plaintiff's basis for his claim." Am. Compl. ¶ 4. The amended complaint further states that, in the letter from Mr. Quinn dated November 14, 2003, "the IRS rejected Plaintiff's claim for the return of his money." *Id.*

On July 2, 2007, the government again moved to dismiss the amended complaint pursuant to RCFC 12(b)(1), on the ground that this court lacked subject matter jurisdiction to consider the plaintiff's claim. As noted above, after briefing and oral argument on that motion, this court denied the government's motion on December 4, 2007. *Pennoni,* 79 Fed.Cl. at 553. The court held that it had subject matter jurisdiction over the plaintiff's case under the Tucker Act as a timely suit for recovery of an "illegal exaction." *Id.* at 560–62. On December 17, 2007, the government moved for reconsideration of

---

9. Mr. Quinn noted that "the assessed deficiency amount of $72,960.00 is wrong—over by $761.00. We reduced your deficiency from $72,960.00 to $72,199.00 in Appeals, and you signed decision documents for that $72,199.00 in February of 2002." Pennoni Decl. Ex. 11 at 3.

the court's opinion. The court denied the government's motion for reconsideration on January 24, 2008. In denying the motion for reconsideration, the court stated that it would consider the impact of the Supreme Court's decision in *Clintwood Elkhorn* on the jurisdictional issues in the present case if such a decision was available prior to the conclusion of this case.[10] Order Denying Reconsid. at 3 n. 1 (Docket No. 27). The Supreme Court decided *Clintwood Elkhorn* on April 15, 2008. 128 S.Ct. at 1511. The parties subsequently filed the pending cross-motions for summary judgment. Briefing on the cross-motions was completed on January 12, 2009, and oral argument was heard on January 22, 2009.

## DISCUSSION

### I. Standard of Review

The parties have filed cross-motions for partial summary judgment pursuant to RCFC 56. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RCFC 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. 2505. In determining whether a genuine issue of material fact exists, the court must consider the evidence and resolve all doubts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Am. Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1371 (Fed.Cir.2004). A dispute of material fact is genuine "if the evidence is such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248,

106 S.Ct. 2505. Cross-motions for summary judgment do not constitute admissions that no genuine issues of material fact remain. *See Massey v. Del Labs., Inc.*, 118 F.3d 1568, 1573 (Fed.Cir.1997). "Each party carries the burden on its own motion to show entitlement to judgment as a matter of law after demonstrating the absence of any genuine disputes over material facts." *Id.* (citations omitted).

### II. Following the Supreme Court's Decision in *Clintwood Elkhorn*, the Plaintiff's Claim for Return of an Erroneous Refund Wrongfully Collected by the IRS Is Subject to the Tax Refund Claim Provisions of the Internal Revenue Code.

In *Clintwood Elkhorn*, the Supreme Court addressed the issue of whether domestic coal producers were required to file claims for refund with the IRS prior to bringing suit to recover amounts paid as coal excise taxes imposed under 26 U.S.C. § 4121(a). *Clintwood Elkhorn*, 128 S.Ct. at 1520. The coal producers, who had failed to file timely refund claims with the IRS for the years for which they sought refunds in their suit, argued that they were not obligated to file refund claims with the IRS because the coal excise tax violated the Export Clause of the United States Constitution. *Id.* at 1515. More specifically, the coal producers argued that they were not required to file refund claims because their claims could be heard under the Tucker Act as claims founded "upon the Constitution," 28 U.S.C. § 1491(a)(1) (2000), and thus were not subject to the refund claim requirements in the Internal Revenue Code. *Clintwood Elkhorn Mining Co. v. United States*, 473 F.3d 1373, 1374–75 (Fed.Cir.2007). The Federal Circuit held that the coal companies could pursue their claim under the Export Clause, despite having failed to file timely administrative refund claims. *Clintwood Elkhorn*, 128 S.Ct. at 1516. The Supreme Court reversed. *Id.* In an unanimous opinion, the Supreme Court

---

**10.** On February 8, 2008, the defendant filed a counterclaim for "a concomitant amount" of "any portion of the amounts collected by the IRS from plaintiff" that the court concludes the plaintiff is entitled to recover on its claim. Ans. to Am. Compl. ¶ 22.

held that section 7422(a) barred the suit. *Id.* Specifically, the Court found:

> Title 26 U.S.C. § 7422(a) states that *"[n]o suit . . . shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund . . . has been duly filed with"* the IRS. (Emphasis added.) Here the companies did not file a refund claim with the IRS for the 1994–1996 taxes, and therefore may bring "[n]o suit" in "any court" to recover *"any internal revenue tax"* or *"any sum" alleged to have been wrongfully collected "in any manner."* Five "any's" in one sentence and it begins to seem that Congress meant the statute to have expansive reach.

*Clintwood Elkhorn*, 128 S.Ct. at 1516 (latter emphasis added).

In upholding the application of section 7422, the Supreme Court also specifically addressed the breadth of the "any sum" language in section 7422 and held that, regardless of whether the coal excise tax was illegal and therefore not valid as a tax, the taxpayers were still required to file refund claims because section 7422(a) not only applies to suits for the recovery of "any internal revenue tax," but also "goes on to apply its prohibition against suit absent a proper refund claim to *'any sum* alleged to have been excessive or in any manner wrongfully collected.'" *Clintwood Elkhorn*, 128 S.Ct. at 1519 (emphasis in original) (*quoting* section 7422(a)). Thus, the Supreme Court held:

> Even if we agreed that a facially unconstitutional tax for purposes of the tax refund scheme is 'merely in the guise of a tax,' [*Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) ], and therefore not a 'tax alleged to have been erroneously or illegally assessed or collected,' § 7422(a), it would nevertheless clearly fall into the broader category

of 'any sum . . . in any manner wrongfully collected,' *ibid.*

*Clintwood Elkhorn*, 128 S.Ct. at 1519–20.

The Supreme Court in *Clintwood Elkhorn* also noted that

> Congress may not impose a tax in violation of the Export Clause (or any other constitutional provision, for that matter). But it is certainly within Congress's authority to assure that allegations of taxes unlawfully assessed—whether the asserted illegality is based upon the Export Clause or *any other provision of law*—are processed in an orderly and timely manner, and that costly litigation is avoided when possible.

*Id.* at 1519 (emphasis added). Accordingly, "[i]f the companies' claims are subject to [sections 7422 and 6511], those claims are barred *whatever the source of the cause of action." Id.* at 1517 (emphasis added).

The government contends that, under the holding in *Clintwood Elkhorn*, the plaintiff's "illegal exaction" claim in this case is similarly subject to the refund claim requirement set forth in section 7422(a), on the grounds that the plaintiff's suit involves a "sum alleged to have been . . . wrongfully collected" by the IRS in connection with a tax liability. The plaintiff attempts to distinguish the present case from *Clintwood Elkhorn* on the grounds that, in spite of its broad language, the *Clintwood Elkhorn* decision dealt only with "taxpayers" seeking the refund of wrongfully collected "taxes." The plaintiff argues that, because the erroneous refund issued to the plaintiff in this case was not based on a redetermination of the plaintiff's tax liability, it resulted in a non-tax debt, and therefore the plaintiff is challenging the wrongful collection of that non-tax debt, not the wrongful collection of a tax or a sum tantamount to a tax.

The court finds the plaintiff's arguments unpersuasive. First, contrary to the plaintiff's assertions, the IRS indicated to the plaintiff that the IRS was purporting to use its collection powers to recover *taxes owed* under the internal revenue laws. For example, the December 30, 2002 Notice of Intent to Levy stated, "you haven't paid the amount you owe. The law requires that you *pay your tax* . . . ." Pennoni Decl. Ex. 3 (empha-

sis added). Similarly, the May 29, 2003 Final Notice stated, "We've written to you before asking you to contact us about your *overdue taxes.* You haven't responded or paid the amounts you owe.... We are authorized to *collect overdue taxes* by ... levying." Pennoni Decl. Ex. 4 (emphasis added). Both the Notice of Intent to Levy and the Final Notice referred to the requirements of section 6331 of the Internal Revenue Code, which states, as noted above, that, "[i]f any person *liable to pay any tax* neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to *collect such tax* ... *by levy* upon all property and rights to property ... belonging to such person," 26 U.S.C. § 6331(a), and that "[l]evy may be made ... upon the salary or wages or other property of any person with respect to *any unpaid tax,*" 26 U.S.C. § 6331(d). *See* Pennoni Decl. Exs. 3, 4 (emphasis added). Both the Notice of Intent to Levy and the Final Notice indicated a balance due for the plaintiff's Form "1040A" taxes for the tax period ending "12–31–1998." Pennoni Decl. Exs. 3, 4.

Similarly, as Dennis Quinn's November 14, 2003 letter to the plaintiff indicates, the IRS levied the plaintiff's account and wages on the grounds, whether mistaken or not, that the plaintiff "clearly ha[d] an amount owing" for his 1998 tax year once "the deficiency amount finally was assessed," which the IRS claimed happened after the erroneous refund reflecting the application of the withholding credit had already been sent out to the plaintiff. *See* Pennoni Decl. Ex. 11. Mr. Quinn concluded, in light of this "amount owing," that "the levy action would not appear to be wrong." *Id.* Accordingly, although the plaintiff seeks to characterize the government's levy as an "illegal exaction" that did not relate to the plaintiff's tax liability, the fact remains that at the time of the levy, the IRS asserted that it was collecting unpaid taxes to satisfy a liability under the internal reve-

nue laws. Because the plaintiff in this case alleges that the IRS "erroneously or illegally assessed or collected" this purported unpaid tax amount, just as in *Clintwood Elkhorn,* the plaintiff was required to satisfy the refund claim requirement in section 7422(a) before bringing suit to challenge the allegedly wrongful collection, "whatever the source of the cause of action." *Clintwood Elkhorn,* 128 S.Ct. at 1517.

■ Second, even if the plaintiff is correct in its characterization that the IRS improperly used its levy powers to collect a non-tax debt created by the erroneous refund, rather than to collect an unpaid tax liability, this case nonetheless clearly falls within the "any sum" language of section 7422(a). By its terms, section 7422(a) extends beyond suits for "the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected," to suits for the recovery of "any sum alleged to have been excessive or in any manner wrongfully collected." 26 U.S.C. § 7422(a); *see Clintwood Elkhorn,* 128 S.Ct. at 1519. As the Supreme Court stated in *Clintwood Elkhorn,* even if the IRS's collection in this case was " 'merely in the guise of a tax,' and therefore not a 'tax alleged to have been erroneously or illegally assessed or collected,' § 7422(a), it would nevertheless clearly fall into the broader category of 'any sum ... in any manner wrongfully collected,' *ibid.*" *Clintwood Elkhorn,* 128 S.Ct. at 1519–20. Thus, even if the plaintiff is correct that this case involved a wrongful collection by the IRS of an erroneous non-rebate refund that was not based upon a redetermination of the plaintiff's tax liability, and which therefore constituted a non-tax debt, the collection was nonetheless purportedly undertaken in connection with the IRS's tax collection powers and in connection with the plaintiff's 1998 income taxes. As such, it clearly falls within the purview of the "any sum" language in section 7422(a).[11]

---

11. The court notes that, as the Supreme Court found in *Clintwood Elkhorn,* "[t]he refund scheme in the current Code would have 'no meaning whatever' if taxpayers failing to comply with it were nonetheless allowed to bring suit subject only to the Tucker Act's longer time bar." *Clintwood Elkhorn,* 128 S.Ct. at 1517 (quoting *United States v. A.S. Kreider Co.,* 313 U.S. 443,

447–48, 61 S.Ct. 1007, 85 L.Ed. 1447 (1941)). Every claim for refund under section 7422(a) is essentially an assertion that what the IRS collected using its tax powers was not owed as a tax. Thus, the important question for purposes of whether the claim falls under the refund claim requirements of the Internal Revenue Code is not on what basis the plaintiff claims the amount

In light of the foregoing, the court finds that the plaintiff's claim is subject to section 7422(a), and the case will be dismissed if the plaintiff cannot establish that he has fulfilled the refund claim requirements set forth in the Internal Revenue Code.

### III. The Plaintiff's Informal Claim Is Not Sufficient To Establish Jurisdiction.

■ Having concluded that the plaintiff's claim is subject to the refund claim requirements under section 7422, the court now turns to whether the plaintiff complied with the administrative claim procedures before filing the present lawsuit. Whether a plaintiff has satisfied the claim requirements depends in part on whether the plaintiff has filed a timely claim with the IRS. *See, e.g.,* 26 U.S.C. § 7422(a) ("No suit or proceeding shall be maintained ... until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."); 26 U.S.C. § 6511(a) ("Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later...."); 26 U.S.C. § 6532(a)(1) (2000) ("No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.").

■ A plaintiff may satisfy the timeliness component of the claim requirement by filing a formal claim, in accordance with Treasury Regulation ("Treas. Reg.") § 301.6402-2 (2000),[12] or by filing an informal claim of which the formal defects are later remedied by amendment of the claim. *See United States v. Kales,* 314 U.S. 186, 194, 62 S.Ct. 214, 86 L.Ed. 132 (1941) ("This Court ... has often held that a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim, where formal defects and

was not owed, but whether the IRS was purporting to collect it in connection with the IRS's tax collection powers. *See Clintwood Elkhorn,* 128 S.Ct. at 1517 ("If the companies' claims are subject to [sections 7422 and 6511], those claims are barred whatever the source of the cause of action."); *id.* at 1519 (The refund claim requirements assure that allegations of taxes unlawfully assessed and sums wrongfully collected "are processed in an orderly and timely manner," avoiding "costly litigation," regardless of the provision of law upon which the asserted illegality is based.).

12. Treas. Reg. § 301.6402-2, "Claims for credit or refund," states, in relevant part:

(b) Grounds set forth in claim. (1) No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit....
(c) Form for filing claim. Except for claims filed after June 30, 1976 for the refunding of overpayment of income taxes, all claims by taxpayers for the refunding of taxes, interest, penalties, and additions to tax shall be made on Form 843. For special rules applicable to income tax, see § 301.6402-3.

In turn, Treas. Reg. § 301.6402-3(a) (2000), "Special rules applicable to income tax," states in relevant part:

(1) In general, in the case of an overpayment of income taxes, a claim for credit or refund of such overpayment shall be made on the appropriate income tax return.
(2) In the case of an overpayment of income taxes for a taxable year of an individual for which a Form 1040 or 1040A has been filed, a claim for refund shall be made on Form 1040X ("Amended U.S. Individual Income Tax Return").

lack of specificity have been remedied by amendment filed after the lapse of the statutory period."); *Computervision Corp. v. United States*, 445 F.3d 1355, 1364 (Fed.Cir. 2006) ("Under the informal claim doctrine, a timely claim with purely formal defects is permissible if it fairly apprises the IRS of the basis for the claim within the limitations period.").

The government contends that the plaintiff's action must be dismissed because the plaintiff failed to file a valid formal or informal claim and because, even assuming the plaintiff fulfilled the requirements for an informal claim, the informal claim was never perfected by the filing of a formal claim. The government acknowledges that under *Kales* and its progeny, an informal claim tolls the limitations period for filing a refund claim, but argues that an informal claim must be perfected through a formal claim remedying the defects before a court may assume jurisdiction.

The plaintiff contends that the notice provided to the IRS in the plaintiff's September 9, 2003 facsimile together with the plaintiff's contemporaneous phone calls to the IRS in Memphis were sufficient to meet the informal claim requirement. Indeed, the plaintiff argues that nothing more was required, because the IRS does not have a formal process for taxpayers seeking reimbursement of an erroneous refund. The plaintiff contends that there was no specific IRS form for him to file. *See* Tr. of Oral Arg. 7:14–8:9 (Docket No. 62). In such circumstances, the plaintiff argues that his informal claim is sufficient for purposes of section 7422 and that, therefore, this court must assume jurisdiction over his case.

For the reasons set forth below, the court finds that while the plaintiff satisfied the requirements of an informal claim, the plaintiff's failure to file a formal claim with the IRS before filing suit deprives this court of jurisdiction to hear the case.

## A. The Plaintiff Satisfied the Requirements for an Informal Claim.

As the Supreme Court stated in *United States v. Kales*, "a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim, where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period." 314 U.S. at 194, 62 S.Ct. 214. The Federal Circuit and its predecessor court, the Court of Claims, have long recognized this "informal claim doctrine." *See, e.g., Computervision*, 445 F.3d at 1364; *Arch Eng'g Co. v. United States*, 783 F.2d 190, 192 (Fed.Cir.1986); *Barenfeld v. United States*, 194 Ct.Cl. 903, 442 F.2d 371, 374 (1971); *Stuart v. United States*, 131 Ct.Cl. 174, 130 F.Supp. 386, 388–90 (1955); *Am. Radiator & Std. Sanitary Corp. v. United States*, 162 Ct.Cl. 106, 318 F.2d 915, 920–22 (1963). An informal claim is valid if (1) it is submitted within the limitations period, (2) it has a written component, and (3) it adequately apprises the IRS that a refund is sought and for certain years. *Computervision*, 445 F.3d at 1364–65 *(citing Kales*, 314 U.S. at 194, 62 S.Ct. 214; *Am. Radiator*, 318 F.2d at 920). "The determination of whether a taxpayer has satisfied the requirements for an informal claim is made on a case-by-case basis and is based on the totality of the facts." *Donahue v. United States*, 33 Fed.Cl. 600, 608 (1995) *(citing Am. Radiator*, 318 F.2d at 920), *cited in Mobil Corp. v. United States*, 67 Fed.Cl. 708, 716 (2005).

Here, the court finds that the plaintiff's September 9, 2003 facsimile together with his phone conversations with IRS personnel were sufficient to meet the criteria for an informal claim. First, the plaintiff's claim was timely filed on September 9, 2003, less than three years after the plaintiff filed his tax return for the 1998 tax year, Syverson Decl. Ex. 3 (plaintiff's Form 1040, dated April 15, 2001 and stamped received on April 18, 2001), as required by section 6511(a). 26 U.S.C. § 6511(a) (refund claims "shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later . . . ."). Second, the plaintiff's claim had a written component, in the form of the facsimile to the IRS Memphis

office, including the cover letter requesting the IRS to stop levying his accounts and the attached documents. Pennoni Decl. Ex. 7. Third, it is clear from the facts and circumstances that the IRS was on notice that the plaintiff was asserting a right to a refund and for a specific year. The facsimile cover sheet stated that the plaintiff believed "there was no deficiency for 1998," and the plaintiff included documents pertaining to that year. *Id.* Although the facsimile cover page was sent "Attn: Reconsideration" and did not specifically mention the word "refund," stating instead that the levy and wage garnishment "should be withdrawn ASAP," *id.*, it is not disputed that the plaintiff had several phone conversations with the IRS in which he told IRS officials at the Memphis Service Center that he wanted the IRS to return the amounts taken by the IRS through the levy.[13] *See* Pennoni Decl. ¶ 5 (Docket No. 38–2). Viewed in conjunction with the plaintiff's phone calls to the IRS, the plaintiff's facsimile fairly apprised the IRS that the plaintiff wanted the IRS to both stop levying his accounts and to return the amounts taken by the IRS under its levy authority, on the grounds that the plaintiff believed that he no longer had any deficiency in his income tax for 1998 and that therefore the levy was improper.

Thus, the court finds that the plaintiff's informal claim gave the IRS sufficient notice that the plaintiff believed that his tax liability for 1998 had been extinguished through the resolution of the Tax Court proceeding and that he did not have any tax liability or deficiency subject to levy.

## B. The Plaintiff Failed to Properly Perfect His Claim.

▮ Although the court agrees with the plaintiff, as discussed above, that he fulfilled the requirements for an informal claim, the court now turns to the government's contention that the plaintiff's failure to file a formal claim perfecting the defects in his informal claim prior to bringing suit in this court

precludes the court from assuming jurisdiction over this case.

▮ Although a sufficient informal claim may prevent a plaintiff's claim from being rejected as time-barred, failure to subsequently perfect the claim by complying with the formal claim requirements will bar the court from exercising jurisdiction over the claim. *Greene–Thapedi v. United States,* 549 F.3d 530, 533 (7th Cir.2008) ("Because [the plaintiff] failed to perfect her administrative claim for a refund ..., the district court lacked subject matter jurisdiction.") *(citing Kales,* 314 U.S. at 194, 62 S.Ct. 214 (an informal notice "will nevertheless be treated as a claim, *where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period* " (emphasis added)); *PALA, Inc.,* 234 F.3d at 879 ("[C]ourts will excuse 'harmless noncompliance' with the formalities prescribed for refund claims," provided that the taxpayer corrects the formal deficiencies at a later time.); *Kaffenberger v. United States,* 314 F.3d 944, 954 (8th Cir.2003) ("Although the regulation states that a claim that fails to comply with the requirements will not be considered as a claim for refund, [Treas. Reg.] § 301.6402–2(b)(1), the Supreme Court has endorsed informal claims filed within the statutory period that have technical deficiencies, as long as a valid refund claim is subsequently made after the period has run.")); *see also Greene–Thapedi,* 549 F.3d at 533 ("The informal claim doctrine is predicated on the expectation that any formal deficiency will at some point be corrected. To hold otherwise would eliminate, as a practical matter, the formal claim requirement." *(citing PALA,* 234 F.3d at 879)). "The requirement for filing a proper refund claim 'is designed both to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination.'" *Computervision,* 445 F.3d at 1363 *(quoting Alexander Proudfoot Co. v. United States,* 197 Ct.Cl. 219, 454 F.2d 1379 (1972));

---

13. Although an informal claim must have a written component, it may also include oral communications. *PALA, Inc. Employees Profit Sharing Plan & Trust Agreement v. United States,* 234 F.3d 873, 877 (5th Cir.2000).

*Greene–Thapedi,* 549 F.3d at 533 ("Requiring compliance with the administrative exhaustion requirement gives the Government a full opportunity to address the problem administratively." (citing *BCS Fin. Corp. v. United States,* 118 F.3d 522, 524–25 (7th Cir.1997))).

In view of the above authority, the plaintiff's contention that he was not required to perfect his informal claim with a formal claim must be rejected. First, the plaintiff's contention that a formal claim was not required because there is no IRS form for the return of an erroneous refund improperly collected is based on a mischaracterization of the plaintiff's informal claim. The plaintiff's informal claim, in response to the IRS's levy of the plaintiff's purportedly unpaid Form 1040A taxes for the tax period ending 12–31–1998, was based on the stated contention that the taxpayer had "no deficiency for 1998" by virtue of the Tax Court litigation, and that therefore the levy and wage garnishment were "wrongful and should be withdrawn." *See* Pennoni Decl. Exs. 3, 4, 7. In circumstances such as these, in which the IRS was levying taxes purportedly owed as Form 1040A tax for the 1998 tax year, the plaintiff should have filed a refund claim in the form of an amended income tax return, Form 1040X—the form prescribed for refunds of income taxes when a Form 1040 or 1040A has already been filed. Treas. Reg. § 301.6402–3(a)(2) ("In the case of an overpayment of income taxes for a taxable year of an individual for which a Form 1040 or 1040A has been filed, a claim for refund shall be made on Form 1040X ('Amended U.S. Individual Income Tax Return').").

It is immaterial that the plaintiff argues that, in this case, there was no "overpayment of income taxes" because, in his view, the erroneous refund gave rise to a non-tax debt. As noted above, the relevant inquiry is not on what legal basis the plaintiff believes he is owed the refund, but rather what action the IRS has taken, rightly or wrongly, that the

plaintiff is challenging in his refund claim. Here, the IRS, rightly or wrongly, used its tax collection powers to levy the plaintiff's bank accounts and garnish his wages to recoup what the IRS asserted were "overdue taxes" pertaining to the plaintiff's 1998 Form 1040A, Pennoni Decl. Exs. 3, 4, created by a refund being sent prior to the plaintiff's 1998 income tax deficiency being assessed. Pennoni Decl. Ex. 11. To recover the levied amounts, therefore, the plaintiff should have formalized his informal claim by filing a Form 1040X on which he indicated his position that he had no tax deficiency for 1998 as a result of the Tax Court decision, that the erroneous refund was not based upon a redetermination of his tax liability and was therefore a non-rebate refund resulting in a nontax debt, that such refunds can only be collected by the IRS by filing suit under section 7405 and/or referring the collection to the FMS,[14] and that therefore the plaintiff was due a refund of the amounts that were improperly collected by levy and wage garnishment. To the extent that the lines on Form 1040X were not adequate to fully explain the plaintiff's view of the situation, he should have used the "Explanation of Changes" section of Form 1040X to clarify his position.[15]

Second, by failing to file a formal claim, the plaintiff deprived the IRS of the opportunity to correct what the plaintiff saw as the IRS's mistake. As noted above, the purpose of the formal claim requirements is to give the IRS an opportunity to respond to the taxpayer's objections. *Greene–Thapedi,* 549 F.3d at 533 ("Requiring compliance with the administrative exhaustion requirement gives the Government a full opportunity to address the problem administratively."); *see also Computervision,* 445 F.3d at 1363. In this case, because the plaintiff failed to follow up with a formal claim with the IRS, the IRS had no way of knowing that the plaintiff specifically objected to the levy on the grounds that the IRS should have filed an

---

**14.** *See* footnote 1, *supra,* regarding the evolution of the plaintiff's argument as to what methods of collection of the erroneous refund were permissible.

**15.** To perfect his informal claim, the plaintiff was required to sign a written declaration that it was

made under penalty of perjury. Treas. Reg. § 301.6402–2(b)(1) ("The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury."). Such a declaration is included on Form 1040X.

action under section 7405 for the return of an erroneous refund and/or referred the debt to the FMS under 31 C.F.R. Part 285.[16] Had the plaintiff laid out his precise legal objections to the levy in a formal claim, the IRS would have had an opportunity to determine whether it was required to follow the procedures identified by the plaintiff and to take any corrective action it deemed to be appropriate under the circumstances.[17]

In sum, because the plaintiff failed to perfect his informal claim for a refund by filing a formal claim with the IRS before filing suit,[18] the plaintiff failed to satisfy the refund claim requirements of the Internal Revenue Code, and this court lacks subject not on notice that the plaintiff disagreed with Mr. Quinn's analysis of the basis for the IRS's decision to levy his account. matter jurisdiction to consider his claim.[19]

## CONCLUSION

For the reasons set forth above, the government's motion for summary judgment is **GRANTED**. The plaintiff's motion for summary judgment is **DENIED**. The clerk shall enter a judgment dismissing the case for lack

16. The court agrees with the plaintiff that, because the letter from Mr. Quinn was not sent by certified or registered mail, it does not constitute a notice of disallowance for purposes of running the statute of limitations under section 6532(a). *See* 26 U.S.C. § 6532(a) ("No suit or proceeding under section 7422(a) ... shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years *from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance* of the part of the claim to which the suit or proceeding relates." (emphasis added)); *Thomas v. United States*, 166 F.3d 825, 830 (6th Cir.1999) (finding that an IRS letter informing the taxpayer of a rejected claim not sent by certified or registered mail "could not start the limitations period" under section 6532(a)(1)). Rather than formally disallowing the claim, the letter from Mr. Quinn was an explanation of the IRS's action with regard to the levy, putting the plaintiff on notice that the IRS believed he had an amount owing for his 1998 tax year as a result of a refund being sent before his 1998 tax liability was assessed. Pennoni Decl. Ex. 11. Because the plaintiff failed to file a formal claim for a refund on Form 1040X after receiving Mr. Quinn's letter, the IRS was

17. The government contends that this failure to identify the specific legal grounds for the plaintiff's objection causes the plaintiff's claim to fail as an informal claim in the first instance. Def.'s Mot. at 26 (citing *New England Elec. Sys. v. United States*, 32 Fed.Cl. 636, 641 (1995), *appeal dismissed* 56 F.3d 83, 1995 WL 323854 (Fed.Cir. 1995) (table)). Alternatively, the government argues that the plaintiff's objections to the collection procedures used by the IRS "substantially vary" from the objection raised in the plaintiff's September 9, 2003 facsimile, and that therefore the plaintiff is barred from pursuing his claim. Def.'s Mot. at 27–28.

However, the Supreme Court in Kales made clear that a claim that is merely "too general ... will nevertheless be treated as a claim" where that "lack of specificity" is "remedied by amendment filed after the lapse of the statutory period." 314 U.S. at 194, 62 S.Ct. 214. Accordingly, the court finds that the plaintiff's lack of detail as to the full legal explanation for his objection is not grounds for rejecting his informal claim. However, the court emphasizes that in circumstances such as these, the requirement that the informal claim be perfected is particularly important in order to allow the IRS an opportunity to fully consider the plaintiff's specific legal objections. *See Greene–Thapedi*, 549 F.3d at 533; *Computervision*, 445 F.3d at 1363.

18. Because the court finds that the plaintiff's failure to subsequently formalize his informal claim deprives this court of jurisdiction, the court does not reach the question of whether or not the plaintiff may still remedy the defects of his informal claim by filing a formal claim. *See Greene–Thapedi*, 549 F.3d at 533 ("In previous cases that have applied the informal claim doctrine, the taxpayers followed their informal submissions with proper formal claims *before initiating litigation*." (emphasis added)).

19. To the extent that the findings herein conflict with this court's earlier opinion in *Pennoni*, 79 Fed.Cl. at 556–60, the present opinion is intended to supersede the earlier one. Given the breadth of the Supreme Court's holding in *Clintwood Elkhorn*, 128 S.Ct. at 1511, as discussed above, several of the authorities relied upon in the court's earlier opinion have been called into question. Moreover, the court has reexamined on summary judgment its findings of jurisdictional facts in the prior opinion and now concludes as a matter of fact that the IRS was purporting (correctly or not) to collect the levy and wage garnishment amounts from the plaintiff to satisfy the plaintiff's outstanding tax liability with respect to the 1998 tax year. Accordingly, regardless of the plaintiff's characterization of his claims, in order to challenge the IRS's collection activities in this court, the plaintiff was first required under section 7422(a) to file a valid refund claim with the IRS.

of subject matter jurisdiction.   Each party is to bear its own costs.

**IT IS SO ORDERED.**